467 P.2d 603

William V. DAVIS, dba Davis Electric Company, Plaintiff and Appellant,

v.

Stanley L. BARRETT and Iris Barrett, and Perc Peterson, dba Timberlan Sales Company, Defendants and Respondents.

No. 11675.

Supreme Court of Utah.

April 7, 1970.

**163**

Lorin N. Pace (of Harris, Runyan & Pace), Salt Lake City, for appellant.

Tex R. Olsen, Richfield, David B. Dee, Salt Lake City, for respondents.

CALLISTER, Justice:

Plaintiff, Davis, appeals from the judgment of the trial court denying him enforcement of his mechanic's lien. The defendants, the Barretts, the owners of real property situated in Salina, Utah, entered into a contract with defendant, Perc Peterson, dba Timberlan Sales, for the construction of a supermarket. The contract price for the building was $58,350. The contract provided that the building was to be a "turn-key job" except for equipment, counters, sales aids, freezing equipment, etc. The contract further specifically provided:

> Wiring: All wiring to be done by Contractor inside building. Yard lights on 3 corners of building facing into yard. No other outside wiring.

Prime contractor, Peterson, subsequently entered into a subcontract with plaintiff, Davis, whereby Davis promised to do "complete electric wiring as per plans & specs." for the amount of $6,000.

During the construction process a certain mechanical package arrived at the site; included therein were the heating and air conditioning units, two condensing units, and refrigeration compressors, which came equipped with an alarm system. Electrician Davis informed landowner Barrett that the installation of this equipment and its controls was not included in his subcontract, i. e., the installation was not indicated in the plans and specifications, which he received from Peterson.

The trial court observed that it found the testimony of a witness named Scott most persuasive as to what defendant Barrett responded when informed by Davis that his contract did not include the electrical hook-up of the equipment. Scott testified that Barrett indicated that he had bought a turnkey job and that it was not his responsibility to pay for the allegedly extra wiring. Barrett instructed Davis to go ahead and do the wiring in order to get the store open, and if there were a discrepancy as to the responsibility to pay Davis, Barrett would deduct the amount from Peterson's contract.

Plaintiff, Davis, was not paid fully for his labor and materials, and on September 26, 1966, he filed a notice of lien. The

amount of the lien was for $4,861.15; of this sum $2,800 was for the unpaid balance on the $6,000 subcontract, and the remainder of $1,861.15 was for the extras not indicated in the plans and specifications.

Barrett informed Davis that he would not pay anything on the account unless the lien was released. At the time, Davis refused, but subsequently the parties arranged for Barrett to send a cashier's check to a bank in Brigham City to be held in escrow and paid to Davis only upon presentment of a lien release.

Davis received the check for $2,800, which discharged the balance of the indebtedness under the subcontract for $6,-000. The document presented by Davis to the bank in exchange for the check recited that he waived and released his lien rights for the labor and materials furnished pursuant to a written contract for the contract price of $2,800 only. He further specified that he reserved any and all rights to which he was entitled by virtue of the Mechanics' and Materialmen's Lien Laws of the State of Utah for the extra labor and materials furnished to the property over and above the contract price of $2,800.

The trial court denied Davis his lien in this action on the ground that he had waived, released, and surrendered his lien rights on October 4, 1966. The court found that the release was granted to Barrett for a good and valuable consideration and fully released all claims and lien rights that Davis may have acquired against the Barrett Market property.

■ The document on its face indicates no more than a pro tanto discharge of the indebtedness secured by the lien. Furthermore, it is hornbook law that a release is not supported by a sufficient consideration unless something of value was received to which the creditor had no previous right. The trial court erred in its finding that plaintiff had released his lien. Defendant Barrett suggests on appeal that Davis is estopped to deny the release; this matter was not presented to the trial court and may not be considered for the first time on appeal.

■ The trial court did grant judgment to plaintiff Davis against prime contractor Peterson for the entire cost of the extras, $1,861.15, plus interest and attorney's fees. Peterson is not involved in this appeal. On appeal, plaintiff Davis asserts that he is entitled to have his lien declared valid and to be awarded judgment enforcing the same against the landowners, Barretts. With this contention we agree.

Section 38–1–3, U.C.A.1953, provides:

Contractors, subcontractors * * * shall have a lien upon the property upon or concerning which they have rendered service, performed labor or furnished materials, for the value of the service

rendered, labor performed or materials furnished by each respectively, whether at the instance of the owner or of any other person acting by his authority as agent, contractor, or otherwise. * * *

The parties appear to have digressed somewhat and have engaged in an argument over the finding of the trial court that there was no oral agreement between Davis and Barrett for Barrett to pay for the extras.

Section 38–1–3, U.C.A.1953, grants a lien to one who furnishes material and labor, whether at the instance of the owner or any other person acting by his authority.

* * * The word "instance" denotes an impelling motive, influence, or cause; at the solicitation or suggestion of. * * *[1]

Plaintiff Davis furnished the extra labor and material at the instance of the owner and is therefore entitled to his lien. The purpose of Section 38–1–3, U.C.A.1953, was to protect those who have added directly to the value of real property by performing labor or furnishing material. This statute was intended and designed to prevent the owner of land from taking the benefit of improvements placed on his property without paying for the labor or material that went into them.[2]

The judgment of the district court is reversed and remanded with direction that judgment be entered in accordance with this opinion. Costs are awarded to plaintiff.

CROCKETT, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

1. Prows v. Hawley, 72 Utah 444, 456, 271 P. 31, 35 (1928).

2. Frehner v. Morton, 18 Utah 2d 422, 424, 424 P.2d 446 (1967).