TATE, Circuit Judge:
 

 Sigma Service Corporation (“Sigma”), debtor in possession of a bankrupt general contracting firm, appeals from a judgment of the district court, 22 B.R. 984, that held that money due to it from Georgia-Pacific Corporation (“Georgia-Pacific”) and Mississippi Chemical Corporation (“Mississippi Chemical”) (two companies for which Sigma had contracted to perform contracting serv
 
 *964
 
 ices) did not in fact form a part of its bankruptcy estate. These funds represent amounts admittedly due, under contract, to Sigma from the two companies, but a competing claim to the money has been raised by two parties, L.B. Foster Company, (“Foster”) and the Dura-Wood Treating Company Division of Roy 0. Martin Lumber Company, Inc. (“Dura-Wood”), who claim that the money is subject, under state law recognizable in bankruptcy, to a “constructive trust” in their favor. Therefore, Foster and Dura-Wood argue, the money belongs to them as owners of the beneficial interest in the constructive trust.
 

 The bankruptcy court rejected the claims of Dura-Wood and Foster and ordered that the amounts due to Sigma by Georgia-Pacific and Mississippi Chemical be turned over to Sigma’s estate. Mississippi Chemical did not appeal the order of the bankruptcy judge and turned over to the debtor in possession the sums due by it to Sigma. However, Dura-Wood, Foster, and Georgia-Pacific (the appellees now before us) did appeal to the district court, which reversed the bankruptcy court, accepting the constructive trust theory and concluding, therefore, that the money subject to the trust had never become “property of the estate and was therefore not subject to being turned over to the estate.”
 

 We reverse the district court and remand.
 
 First,
 
 even if the debt due by Georgia-Pacific to Sigma included funds subject to a constructive trust or other equitable claim of Dura-Wood and Foster, nevertheless Sigma had legal title to the account so due and it therefore was part of the debtor’s estate, 11 U.S.C. § 541(a), (d), that was required to be turned over to the administrator of the debtor’s estate, 11 U.S.C. § 542(a), (b), subject to recognition in the bankruptcy court of the equitable interest of the claimants, 11 U.S.C. § 541(d), 4 Collier on Bankruptcy, ¶ 541.13 (15th ed., 1983).
 
 Second,
 
 we find that neither Dura-Wood or Foster had a constructive trust or a protected equitable interest in the accounts arising out of their joint-check arrangement or state lien law.
 

 The Factual Background
 

 The undisputed facts indicate that prior to the commencement of the bankruptcy proceedings in this case, Sigma undertook to perform general contracting duties for two companies in two separate construction projects, one in Arkansas for Georgia-Pacific and the other in Mississippi for Mississippi Chemical. Dura-Wood and Foster, as material suppliers, provided materials needed for the Arkansas project, and Dura-Wood provided materials needed for the Mississippi project.
 

 With regard to the Arkansas project:
 

 The record indicates that prior to the contract performance, Sigma sent a letter to Georgia-Pacific requesting that payments to materialmen on the project be accomplished by sending checks to Sigma drawn to the order of both Sigma and to the materialmen. The letter does not specify any affirmative duties of Sigma with regard to the materialmen, but it is apparent, in light of the statement in the letter to the effect that this procedure would ensure the prompt payment of suppliers, that Sigma planned to endorse the checks over to the named materialmen in payment for supplies previously delivered by them to Sigma. In apparent acceptance of the plan proposed by this letter, Georgia-Pacific thereafter sent two checks to Sigma, one made jointly payable to Sigma and Dura-Wood (for the amount of $11,058.19) in partial payment for material supplied by Dura-Wood to Sigma, and one made jointly payable to Sigma and Foster ($13,756.61) in partial payment for material supplied by Foster to Sigma.
 

 Sigma, however, did not endorse the checks over to the respective materialmen, but instead (after its request for re-issuance of the checks to it as sole payee was refused by Georgia-Pacific), retained the checks, filed a petition as debtor in possession for reorganization relief under Chapter 11 of the Bankruptcy Code of 1978, 11 U.S.C. §§ 101 et seq., and filed this complaint in bankruptcy court to require Georgia-Pacific to turn over sums due to Sigma, but still retained by Georgia-Pacific. The total
 
 *965
 
 amount now claimed from Georgia-Pacific is $63,187.30, representing the amounts paid by joint-payee checks plus additional amounts due to Sigma for materials supplied by Dura-Wood and Foster.
 

 With regard to the Mississippi construction project:
 

 The record does not reflect that any joint-check arrangement was made with regard to the amounts here at issue. Dura-Wood, however, provided materials to Sigma for this project and billed Sigma for $2,563.20, for which no payment has been made. Prior to the filing of the bankruptcy petition in this case, a statutory “stop-notice” was served on Mississippi Chemical by another of Sigma’s unpaid material suppliers (not a party to this appeal). Under the state lien statute, this stop-notice had the effect of binding in Mississippi Chemical’s hands at least all amounts then due to that materialman. Subsequent to the filing for bankruptcy, Dura-Wood also transmitted a stop-notice to Mississippi Chemical.
 

 Sigma, debtor in possession, instituted this claim demanding the turnover of the amounts due to its estate. 11 U.S.C. § 542.
 

 The bankruptcy court concluded that all disputed amounts formed a part of Sigma’s bankruptcy estate, and it ordered that Georgia-Pacific and Mississippi Chemical pay such amounts into the estate. Mississippi Chemical acquiesced in the order and did not appeal. On appeal by Georgia-Pacific, Dura-Wood, and Foster to the district court, the bankruptcy court’s order was reversed. With regard to Georgia-Pacific, the district court concluded, under Arkansas lien law, and also relying on the joint-payee nature of the checks and on decisions from other jurisdictions decided under the former Bankruptcy Act, that a constructive trust in favor of Dura-Wood and Foster would be impressed on the amounts due to Sigma from Georgia-Pacific. In addition, relying on the strong wording of the Mississippi lien statute, the district court concluded that a constructive trust would be imposed in favor of Dura-Wood on the amounts due Sigma from Mississippi Chemical. Under this constructive trust theory, the amounts due to Sigma never became “property of the estate” and could not be collected by Sigma in these bankruptcy proceedings. Sigma appeals from this judgment against it.
 

 In concrete terms, the appeal concerns the district court’s reversal of the bankruptcy court insofar as: (a) Georgia-Pacific was ordered to turn over to the debtor in possession $55,690.21 (see note 3
 
 infra)
 
 that it owed to Sigma, subject to a credit for prior payments that apparently included the $11,-058.19 paid by joint check to Sigma and the appellee Dura-Wood and the $13,756.60 paid by joint check to Sigma and the appellee Foster, suppliers to Sigma for work performed by it for Georgia-Pacific; (b) it rejected the claims of Dura-Wood and Foster to equitable ownership by virtue of a constructive trust to the funds so paid or to be paid to Sigma by joint checks; and (c) it rejected the claim of Dura-Wood of a constructive trust claim under state lien law to $2,563.20 of the total amount due Sigma by Mississippi Chemical for Sigma’s work on that contract (which amount as noted, was without appeal turned over to the debtor Sigma in accordance with the bankruptcy judge’s order, perhaps (the record is unclear) less the amount owed by Sigma to Dura-Wood). The amounts claimed by Dura-Wood and Foster are for materials delivered to Sigma’s contract sites in July and August, 1980. Sigma filed its petition for relief as a debtor in possession on October 14, 1980.
 

 The Statutory Scheme
 

 The issues before us arise under the Bankruptcy Code of 1978, 11 U.S.C. §§ 101 et seq. The application of §§ 541 and 542 are particularly at issue, and we have set them forth in full in an appendix to this opinion.
 

 Under § 541(a)(1), upon the filing of a petition for bankruptcy, an estate is created of “all legal or equitable interests of the debtor in property as of the commencement of the case.” Under § 542(b), if this property is in the form of a debt due and payable to the estate, it shall be turned over
 
 *966
 
 to the trustee — or to the debtor in possession
 
 [1]
 
 — by any entity owing such debt. In order to satisfy the language of § 542(b), however the debt owed must be “property of the estate.”
 
 [2]
 

 Under § 541(d), property that the bankrupt debtor holds subject to the interest of another entity, becomes the property of the estate subject to that interest. This section provides that,
 

 [pjroperty in which the debtor holds only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor’s legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
 

 § 542(a) provides that, with exceptions not here applicable, any entity “in possession, custody, or control during the case, of property that the trustee [or debtor in possession, see note 1,
 
 supra
 
 ] may use, sell, or lease under section 363 of this title ... shall deliver to the trustee, and account for such property.” § 363(c)(1) provides that, when (as here) operation of the business is authorized, the trustee may use property of the estate in the ordinary course of business, except that, § 363(c)(2), the trustee may not use such property, “if a cash equivalent”, where “the estate and an entity other than the estate have an interest”, § 363(a), in the absence of the other entity’s consent, § 363(c)(2)(A), or with court authorization after hearing, § 363(c)(2)(B) (and then only upon such prohibition or condition “as is adequate to provide protection” of such other entity’s interest, § 363(e).)
 

 The Supreme Court recently had occasion to construe the application of these statutory provisions in
 
 United States v. Whiting Pools,
 
 Inc.,-U.S.-, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). There, in rejecting the contention of the Internal Revenue Service that it was not required to turn over to the debtor in possession the debtor’s property seized by the Service prior to the debtor’s filing for reorganization under bankruptcy — and in holding that the reach of the provisions extends even unto property seized by a secured creditor prior to the institution of the bankruptcy proceedings — , the Court stated (footnotes omitted except for footnotes 10 and 12):
 

 The statutory language reflects this view of the scope of the estate. As noted above, § 541(a) provides that the “estate is comprised of all the following property, wherever located: ... all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a)(1). The House and Senate Reports on the Bankruptcy Code indicate that § 541(a)(l)’s scope is broad. Most important, in the context of this case, § 541(a)(1) is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code. See H.R.Rep. No. 95-595, p. 367 (1977). Several of these provisions bring into the estate property in which the debtor did not have a possesso-ry interest at the time the bankruptcy proceedings commenced.
 
 [10]
 

 Section 542(a) is such a provision. It requires an entity (other than a custodian) holding any property of the debtor that the trustee can use under § 363 to turn that property over to the trustee. Given the broad scope of the reorganization estate, property of the debtor repossessed by a secured creditor falls within this rule, and therefore may be drawn into the estate. While there are explicit limitations on the reach of § 542(a),
 
 [12]
 
 
 *967
 
 none requires that the debtor hold a pos-sessory interest in the property at the commencement of the reorganization proceedings^
 

 -U.S.-, 103 S.Ct. at 2313-14.
 

 With particular reference to reorganization proceedings such as the present, the Court concluded “[a]ny other interpretation of § 542(a) would deprive the bankruptcy estate of the assets and property essential to its rehabilitative effort and thereby would frustrate the congressional purpose behind the reorganization provision.” - U.S.-, 103 S.Ct. at 2315.
 

 Application of § 542
 

 Under the statutory provisions and principles thus cited, it is plain that the district court erred in refusing to require Georgia-Pacific to turn over to the debtor in possession the amount of $63,187.30
 
 [3]
 
 owed by Georgia-Pacific to Sigma for work performed by the latter on its construction contract.
 

 Even if all or part of this sum were subject to a “constructive trust”
 
 [4]
 
 in favor
 
 *968
 
 of Dura-Wood, Foster, and other suppliers to Sigma, nevertheless, at the least, Sigma had a “legal” interest in the property so impressed, which was thus property of the estate, § 541(a)(1), required to be turned over to it, § 542(a), (b), subject to the bankruptcy court’s power to recognize the suppliers’ equitable interest, § 541(d) or to issue protective order prohibiting or conditioning its use if a cash equivalent, § 363(c)(3), (4) and § 541(d). Georgia-Pacific, a debtor of Sigma, could not refuse to pay over sums due to the estate and to which the estate had legal title on the contention that some other debtor had a priority or a constructive-trust claim to these sums superior to that of Sigma, the debtor in possession. It is for the bankruptcy court, not a stakeholder with possession of assets in which the debtor has at least a legal interest, to determine such contentions.
 

 As summarized in Collier,
 
 supra,
 
 ¶ 541.13 at 541-66: With regard to property held by the debtor as trustee, “[t]he rule is elementary that the estate succeeds only to the title and rights in the property that the debtor possessed, although the trustee is armed, of course, with the special rights and powers conferred upon him by the Code itself. Therefore ..., the estate will generally hold such property subject to the outstanding interest of the beneficiaries.”
 

 Accordingly, the district court was in error in not requiring Georgia-Pacific to turn over to Sigma, the debtor in possession (and thus the administrator of the bankruptcy estate), the sums owed by it to Sigma for contractual services performed. If indeed all or part of the money so owed was subject to a constructive trust in favor of the suppliers Dura-Wood and Foster, the bankruptcy court would be required to recognize those equitable interests and, perhaps, the debtor in possession’s sole permissible administrative act with regard thereto would be to pay over or endorse the sums due to the beneficial owners of the property.
 
 Constructive Trusts?
 

 Dura-Wood and Foster, Sigma’s unpaid suppliers, nevertheless lay claim to the amount of $63,180.37 owed by Georgia-Pacific to Sigma, now required to be turned over to the debtor in possession. They claim that this sum, representing amounts due them for supplies sold to Sigma for use on Georgia-Pacific’s contract, never became property of the debtor’s estate, despite the latter’s legal title to it. They base this claim upon the contention the sum owed by Georgia-Pacific to Sigma was subject to their equitable interest by virtue of a constructive trust. § 541(a), (b), (d).
 

 Dura-Wood also claims that it is entitled to be paid $2,563.20 of the amount turned over by Mississippi Chemical to the debtor in possession, by virtue of a similar constructive trust in its favor as an unpaid supplier to a general contractor arising under the Mississippi lien law.
 

 This issue was decided by both bankruptcy and district courts, although with opposite results. If Dura-Wood and Foster are correct in their claims, they are entitled to require that the debtor in possession pay to them the sums so impressed with a constructive trust, from the amounts received by Georgia-Pacific or Mississippi Chemical.
 

 (a)
 
 Lien Statutes
 

 The district court based its holding that constructive trusts existed in favor of Dura-Wood and Foster upon the Arkansas and Mississippi lien statutes. Because we find that neither of those statutes intended to create a constructive trust in favor of suppliers, we do not reach Sigma’s forceful contention that, even if they had so intended, under the new Bankruptcy Code, such would be no more than a statutory lien that first became effective upon the debtor’s insolvency or filing for bankruptcy and thus voidable under § 545, or a set-off prohibited by § 553(a)(3), or an attempted device to override the carefully constructed schedule of priorities among creditors established by § 507, cf.,
 
 Ridgway v. Ridgway,
 
 454 U.S. 46, 102 S.Ct. 49, 70 L.Ed.2d 39 (1981).
 

 For present purposes, we thus accept the appellees’ contention that, as with property rights regulated by state law, that
 
 *969
 
 they are entitled to recognition of their claimed constructive trusts if their claim as unpaid suppliers of a general contractor can be so characterized under the Arkansas and Mississippi lien laws respectively. However, we must preliminarily note that “[w]hen property of the estate is alleged to be held in trust, the burden rests upon the claimant to establish the original trust relationship.”
 
 Collier, supra,
 
 ¶ 541.13 at 541-67. This burden is based in part upon the statutory intent reflected by the sweeping marshalling and avoidance powers accorded a trustee in order to secure all the debtor’s property for an equal distribution according to the terms of the Code. Id., ¶ 544.01.
 

 The district court decided that the Arkansas and Mississippi lien statutes created a constructive trust in favor of unpaid suppliers, so that payments due by the owners that included payment for the supplies never became property of the bankruptcy estate of the general contractor. In so doing, it relied primarily upon
 
 Selby v. Ford Motor Company,
 
 590 F.2d 642 (6th Cir.1979) and
 
 In re D & B Electric, Inc.,
 
 4 B.R. 263 (Bkrtcy.W.D.Ky.1980), in which, as held, the law of
 
 the particular state in question
 
 created, with regard to sums due from the owner to the general contractor in bankruptcy, a statutory or constructive trust in favor of an unpaid materialman or subcontractor; so that, therefore, the sums so subject to trust in favor of the suppliers were not property of the estate of the general contractor in bankruptcy.
 
 [5]
 

 However, as will be seen, neither the Arkansas nor the Mississippi lien statute create a statutory or implied trust in favor of unpaid materialman, and these decisions are not persuasive. In
 
 Selby
 
 (which arose under the former Bankruptcy Act), for instance, the Michigan Builders Trust Fund Act expressly created “a ‘trust fund’ for the benefit of the owners and subcontractors on construction projects”, 590 F.2d at 643, under which Michigan law “a subcontractor’s beneficial interest arises when the owner pays the building contract fund”, 590 F.2d at 647.
 
 In re D & B Electric,
 
 which concerned a question as to the priority of liens on uncashed checks that were made jointly payable to a materialman and contractor, the bankruptcy judge found that under Kentucky statutory law, as construed by him, unpaid materialmen were vested with a property right in the nature of a trust in the funds. 4 B.R. at 269. Although the Kentucky statute did not expressly provide for such a trust, the bankruptcy judge felt that such a construction should be implied from “the forceful wording of the act (coupled with criminal penalties for non-compliance), as well as the strong public policy preference of trust fund theory enunciated in
 
 Selby:’ Id.
 

 Whatever the merits of the bankruptcy judge’s reasoning, the present Arkansas and Mississippi lien statutes are not subject to a similar construction under the facts before us:
 

 (1)
 
 The Arkansas lien statute
 

 [6]
 

 has been expressly construed by the Arkansas
 
 *970
 
 supreme court, which decided that unpaid materialman had neither a property interest nor a trust-fund interest in funds paid by the owner to the contractor for his contract work.
 
 Cherokee Carpet Mills, Inc. v. Worthen Bank and Trust Co.,
 
 262 Ark. 776, 561 S.W.2d 310, 313 (1978). Although the issue there concerned whether a creditor bank’s set-off rights to the funds primed those of the suppliers, in deciding the issue the court expressly rejected a constructive or resultant trust claim advanced by the suppliers, stating
 

 [a] partial payment to a contractor by an owner is not held in trust for subcontractors, materialmen, ... even though the contractor is indebted to such persons, he is the owner of the fund and they are not. [This statute does not make] such payments a trust fund or put any title to them in those entitled to liens ....
 

 Cherokee Mills, supra,
 
 561 S.W.2d at 313. (The court also rejected in that case the argument that an equitable trust had arisen from the circumstances there under review.)
 

 2.
 
 The Mississippi lien
 
 law
 
 [7]
 
 arguably creates a lien or a trust fund in favor of unpaid materialman in amounts due by the owner to the general contractor, if certain steps are taken to protect their interest therein. Here, however, whatever right the unpaid materialman, Dura-Wood, had to obtain the benefits of such statutory lien or trust was not exercised until after the institution of bankruptcy proceedings and is voidable under bankruptcy law, as the bankruptcy court held.
 

 The statute (see note 7 supra) provides that, if an unpaid materialman gives notice to the owner, to the extent of this claim the amount due by the owner to the contractor is bound for the payment of such person and that, if after such notice, the contractor sues the owner, the owner shall pay into court the entire amount then due on the contract so that all claimants may assert their right thereto. As stated by the Mississippi supreme court in
 
 McNair v. M.L. Virden Lumber Company,
 
 193 Miss. 232.4 So.2d 684, 688 (1941),
 

 one notice stops the right of the owner to pay the contractor
 
 the amount claimed in that notice.
 

 If other claimants in the same class subsequently give notice to the owner of their claims, or if they do not give the notice, but assert their claims in court, to which the owner is a party,
 
 all before the owner has paid out the funds which he had when the first notice was received,
 
 then all such persons share ratably in those funds.
 

 (emphasis added).
 

 Here, prior to Sigma’s institution of Chapter XI reorganization proceedings, another materialman (not a party to this suit) had issued a stop payment notice to Mississippi Chemical, which (at the time the bankruptcy proceedings were instituted) protect
 
 *971
 
 ed that materialman up to the amount of the notice. Dura-Wood had not at the institution of bankruptcy proceedings asserted whatever protected interest under this Mississippi lien statute it might have obtained by a prior stop-notice order. Dura-Wood gave Mississippi Chemical a stop-notice order two weeks after Sigma’s Chapter XI reorganization petition was filed, but the automatic stop upon institution of bankruptcy proceedings, § 362(a), deprived this notice of valid effect. Any lien or trust-preference right that Dura-Wood might have obtained by prior stop-notice was not perfected prior to the institution of bankruptcy proceedings and is thus not entitled to recognition under the Code. § 545.
 
 See also
 
 § 544 (trustee’s preferred status with regard to avoiding transfers of property of the debtor).
 

 (b)
 
 Joint-check arrangement
 

 Dura-Wood and Foster, the suppliers, also contend that a constructive trust in their favor exists in funds owed Sigma by Georgia-Pacific by virtue of a joint-check arrangement. The bankruptcy judge court rejected this contention, holding that the joint-payee checks did not vest Sigma’s co-payee with any interest in the funds represented by the checks, as a check is merely an order to pay, and as Sigma had revoked the authority to make co-payment for funds due to it prior to negotiation and payment of any checks previously issued. The district court did not expressly reach the joint-check issue, instead basing its constructive-fund determination primarily upon the state lien statutes.
 

 Although there was an evidentiary hearing, following which the bankruptcy judge rejected the joint-check constructive-fund contentions of the appellees (Dura-Wood, Foster, and Georgia-Pacific), these parties did not request that the transcript of evidence taken thereat be designated as part of the record when they appealed from the bankruptcy court’s adverse determination. With regard to this joint-check arrangement, they apparently rely solely upon the documentary evidence.
 

 This documentary evidence consists of a letter of June 10, 1980 written by Sigma, the contractor, to Georgia-Pacific. By it, Sigma entered into a letter-agreement by which Georgia-Pacific would make checks jointly-payable to Sigma and its suppliers for amounts shown on invoices by them to Sigma.
 
 [8]
 
 The stated purpose of the letter agreement was to assure the suppliers of prompt payment and to assure Georgia-Pacific that suppliers were paid.
 

 However, in the absence of any evidence that actions in reliance or other consideration made this agreement binding on Sigma, its naked wording represents merely Sigma’s unilateral agreement to have some of the proceeds contractually due to it from Georgia-Pacific made payable to it by joint checks. It places no affirmative duties upon Sigma in relation to the suppliers, for instance, for Sigma is neither required to endorse the checks nor to transfer them immediately to the suppliers, nor is Sigma prohibited under the terms of the agree
 
 *972
 
 ment from revoking its “plan” as “propose^]” by the letter. Considering the burden upon the appellees to prove that a trust was created by which the funds owed to Sigma were nevertheless not property of its bankruptcy estate, we are unable to find from the letter agreement itself, solely relied upon by the appellees, that Sigma and Georgia-Pacific mutually agreed that Sigma’s suppliers should receive any non-revocable (by Sigma) property interest in the funds due by Georgia-Pacific to Sigma. Nor do the distinguishable joint-check constructive-trust decisions relied upon by the appellees afford support that the present joint-check arrangement resulted in a constructive trust in favor of the Sigma’s suppliers.
 
 [9]
 

 Conclusion
 

 We therefore find that the bankruptcy court correctly determined that funds due to Sigma by Georgia-Pacific and Mississippi Chemical were property of the bankruptcy estate required to be turned over to the debtor in possession, and that the district court erred in holding that any part of such funds were subject to constructive trusts in favor of the suppliers so that they did not form part of such estate. Accordingly, we REVERSE the judgment of the district court, and we REMAND for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Appendix
 

 Sections 541 and 542 of the Bankruptcy Code of 1978, (11 U.S.C. § 1 et seq.), 11 U.S.C. §§ 541 and 542:
 

 § 541. Property of the estate
 

 (a)The commencement of a case under 1 section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located:
 

 (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
 

 (2) All interests of the debtor and the debt- or’s spouse in community property as of the commencement of the case that is—
 

 (A) under the sole, equal, or joint management and control of the debtor; or
 

 (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor’s spouse, to the extent that such interest is so liable.
 

 (3) Any interest in property that the trustee recovers under section 543, 550, 553, or 723 of this title.
 

 (4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.
 

 (5) An interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
 

 (A) by bequest, devise, or inheritance;
 

 (B) as a result of a property settlement agreement with the debtor’s spouse, or of an interlocutory or final divorce decree; or
 

 (C) as a beneficiary of a life insurance policy or of a death benefit plan.
 

 (6) Proceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.
 

 (7) Any interest in property that the estate acquires after the commencement of the case.
 

 (b) Property of the estate does not include any power that the debtor may only exercise solely for the benefit of an entity other than the debtor.
 

 (c)(1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision—
 

 (A) that restricts or conditions transfer of such interest by the debtor; or
 

 (B) that is conditioned on the insolvency or financial condition of the debtor, on the corn-
 
 *973
 
 mencement of a case under this title, or on the appointment of or the taking possession by a trustee in a case under this title or a custodian, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor’s interest in property.
 

 (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.
 

 (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor’s legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.
 

 (e) The estate shall have the benefit of any defense available to the debtor as against an entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate.
 

 § 542. Turnover of property to the estate
 

 (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.
 

 (b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.
 

 (c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.
 

 (d) A life insurance company may transfer property of the estate or property of the debtor to such company in good faith, with the same effect with respect to such company as if the case under this title concerning the debtor had not been commenced, if such transfer is to pay a premium or to carry out a nonforfeiture insurance option, and is required to be made automatically, under a life insurance contract with such company that was entered into before the date of the filing of the petition and that is property of the estate.
 

 (e)Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debt- or’s property or financial affairs, to disclose such recorded information to the trustee.
 

 [1]
 

 . Under § 1107(a) a debtor in possession in a Chapter 11 reorganization proceeding (as this one is) is given all of the rights and powers of a trustee under that chapter (except the right of compensation). And under § 103(a), the powers of a trustee enumerated in Chapter 5 (§§ 501-556) are generally applicable to a case under Chapter 11. Therefore, a debtor in possession in a Chapter 11 proceeding, as well as a trustee, has all of the powers, rights, and duties provided by §§ 541, 542.
 

 [2]
 

 . Section 542(b) provides, in relevant part, that,
 

 an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee....
 

 [10]
 

 See,
 
 e.g.,
 
 §§ 543, 547, and 548. These sections permit the trustee to demand the turnover of property that is in the possession of others if that possession is due to a custodial arrangement, § 543, to a preferential transfer, § 547, or to a fraudulent transfer, § 548.
 

 We do not now decide the outer boundaries of the bankruptcy estate. We note only that Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition. See § 541(b); H.R.Rep. No. 95-595, p. 368 (1977); S.Rep. No. 95-989, p. 82 (1978). Although it may well be that funds that the IRS can demonstrate were withheld for its benefit pursuant to 26 U.S.C. § 7501 (employee withholding taxes), are ex-cludable from the estate, see 124 Cong.Rec. 32417 (1978) (remarks of Rep. Edwards) (Service may exclude funds it can trace), the IRS did not attempt to trace the withheld taxes in this case. See Tr. of Oral Arg. 18, 28-29.
 

 [12]
 

 Section 542 provides that the property be usable under § 363, and that turnover is not required in three situations: when the property is of inconsequential value or benefit to the estate, § 542(a), when the holder of the property has transferred it in good faith without knowledge of the petition, § 542(c), or when the transfer of the property is automatic to pay a life insurance premium, § 542(d).
 

 [3]
 

 . Although the bankruptcy court had ordered turnover by Georgia-Pacific of a lesser amount, the district court apparently found that Georgia-Pacific had in its possession the larger amount stated in text, which was equal to the amounts owed by Sigma to its suppliers, Dura-Wood and Foster, for their materials used by Sigma on its construction contract with Georgia-Pacific.
 

 [4]
 

 . The term “constructive trust” in the sense used for bankruptcy purposes is not defined in the Code nor, so far as we could readily find, in jurisprudential interpretations. The concept expressed is that the person with legal title to the property owes equitable duties to deal with the property for the benefit of another person, Restatement of Trusts, 2d, § 2 (“Definition of a Trust”) (1959), because he acquired the title under circumstances where the transferor intended that another have the beneficial interest therein, cf.
 
 Id.,
 
 § 404, (“Resulting Trust”), or because he acquired it wrongfully or would be unjustly enriched if he were permitted to retain it,
 
 Id.,
 
 Comment e (“Constructive trusts”).
 

 The legislative reports explaining § 541 (“Property of the estate”) refer to the concept thusly:
 

 Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed. This section and proposed 11 U.S.C. § 545 also will not affect various statutory provisions that give a creditor of the debtor a lien that is valid outside as well as inside bankruptcy, or that creates a trust fund for the benefit of a creditor of the debtor.
 
 See
 
 Packers and Stockyards Act section 206, 7 U.S.C. § 196.
 

 H.R.Rep. No. 95-595, 95th Cong. 1st Sess. (1977) 368; Sen.Rep. No. 95-989, 95th Cong.2d Sess. (1978) 82, U.S.Code Cong. & Admin. News, pp. 5787, 5868, 6324.
 

 Collier supra,
 
 ¶ 541- at 541- 67-68 refers to three types of situations in which the courts have held property titled to the debtor to be subject to a constructive trust in favor of another: (1) money paid by mistake or property consigned by mistake to the debtor and sold by him; (2) the trust created by wrongdoing, such as by the debtor’s conversion of money or property belonging to another; and (3) statutory enactments that operate to create trusts in favor of certain persons, the treatise further noting that these latter “must stand the test of being termed priorities in violation of section 507 or statutory liens avoidable under section 545.” Id. at 541-68.
 

 [5]
 

 . Also cited was
 
 United States v. Durham Lbr. Co.,
 
 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371 (1960), which arose under the former Bankruptcy Act and which, strictly speaking did not
 
 concern the
 
 present issue, but instead concerned disputed claims of priority to funds paid by the owner to the general contractor’s bankruptcy estate. In holding that the subcontractor had a superior right than the Internal Revenue Service, the Court did hold, expressly relying on North Carolina law, that under that state’s law, the general contractor did not have a property interest that was subject to seizure by the federal tax laws, in funds owed it for work performed “ ‘except to the extent the claim of the general contractor exceeds the aggregate of the claims of the subcontractors.’ ” 363 U.S. at 525, 80 S.Ct. at 1284.
 

 [6]
 

 . 51-601.
 
 Lien upon building, land or boat
 
 — Persons
 
 entitled to
 
 — Penalty
 
 for failure to discharge liens upon payment.
 
 — Every mechanic, builder, artisan, workman, laborer or other person who shall ... furnish
 
 any
 
 material ... for any building, erection, improvement to or upon land, ... under or by virtue of any contract with the owner or proprietor thereof, ... upon complying with the provisions of this act ... shall have for his work or labor done, or materials ... furnished a lien upon such building .... Any original or principal contractor or his assignee who shall be paid the contract price or any portion thereof, and who shall fail or refuse to discharge the liens created by this section, to the extent of the contract price
 
 *970
 
 received by him, shall be deemed guilty of an offense and punishable as follows:
 

 Ark.Stat. § 51-601 (1969).
 

 [7]
 

 . Miss.Code § 85-7-181 (1942). This statute provides, in relevant part:
 

 §85-7-181.
 
 Amount due contractor may be bound by written notice
 
 — suit
 
 against owner or contractor.
 

 When any contractor or master workman shall not pay any person who may have furnished materials used in the erection, construction, alteration, or repair of any house, building, structure ... the amount due by him ..., any such person ... may give notice in writing to the owner thereof of the amount due him and claim the benefit of this section; and, thereupon the amount that may be due upon the date of the service of such notice by such owner to the contractor or master workman,
 
 shall be bound in the hands of such owner for the payment in full, or if insufficient then pro rata, of all sums due such person ... who might lawfully have given notice
 
 in writing to the owner hereunder, and if after such notice, the contractor or master workman shall bring suit against the owner, the latter may pay into court, the amount due on the contract; and thereupon all persons entitled hereunder, so far as known, shall be made parties and summoned into court to protect their rights, contest the demands of such contractor or master workman and other claimants ....
 
 In case judgment shall be given against such owner, such judgment shall be a lien, from the date of the original notice,
 
 and shall be enforced as other liens provided in this chapter.
 

 (emphasis added).
 

 [8]
 

 . The letter agreement in Sigma’s letter to Georgia-Pacific provided,
 

 Confirming our conversation during our meeting of June 6, 1980, we [Sigma] propose the following plan for payment to our suppliers on the above referenced project:
 

 (1) Sigma Service Corporation will, upon receipt of an invoice from a supplier for material received in good condition, send Georgia-Pacific Corporation an invoice for the same amount as the invoice of the supplier.
 

 (2) Georgia-Pacific Corporation will process the invoice and make payment by joint check to Sigma Service Corporation and the supplier.
 

 (3)Sigma Service Corporation will make normal monthly progress invoices, deducting contract retainage from the gross amount.
 

 As I mentioned at our meeting, the above procedure serves two purposes: (1) Georgia-Pacific is assured that suppliers are paid; and (2) Our suppliers are assured of prompt payment. We would appreciate your immediate acknowledgment so that we may arrange to have the material shipped.
 

 We look forward to beginning work. Please call should you have any questions.
 

 [9]
 

 . Although in the cited decisions constructive trust were impressed on amounts paid under joint-payee check agreements, the factual circumstances are not analogous. In
 
 Keenan Pipe & Supply Company v. Shields,
 
 241 F.2d 486, 489-90 (9th Cir.1956) and
 
 Mullins v. Noland Company,
 
 406 F.Supp. 206, 210 (N.D.Ga.1975), the court found that in each case, the material suppliers had expressly agreed to waive their statutory lien rights in exchange for the joint-check agreements. Accordingly, a stronger equitable argument existed that a constructive trust should be imposed on funds that would have been subjected to their lien had not they waived it by bilateral joint-check agreement between them and the contractor. Likewise, in
 
 Limperis v. Material Service Corporation,
 
 415 F.Supp. 65, 67-69 (N.D.Ill.1976), the construction contract contained an express trust provision in favor of materialmen, and affirmative duties were placed on the general contractor to immediately endorse the joint checks over to the materialman without ever having exclusive possession.