In re DAVIDSON LUMBER
SALES, INC., Debtor.

ZIONS FIRST NATIONAL BANK,
N.A., Plaintiff and Appellant,

v.

CHRISTIANSEN BROTHERS, INC.,
Defendant and Appellee.

Civ. No. 92–C–843B.

United States District Court,
D. Utah, C.D.

Dec. 22, 1993.

J. Randall Call and James Boevers, Prince, Yeates & Geldzahler, Salt Lake City, UT, for Zions First Nat. Bank, N.A.

Bryce D. Panzer, Snow, Christensen & Martineau, Salt Lake City, UT, for Christiansen Bros., Inc.

David O. Black, Black & Jensen, Salt Lake City, UT.

Julie D. Carver, U.S. Bankruptcy Court, Salt Lake City, UT.

## MEMORANDUM DECISION AND ORDER

BENSON, District Judge.

On June 2, 1993, a hearing was held before the Honorable Dee Benson on an Appeal from an Order of the Bankruptcy Court granting Summary Judgment in favor of the Appellee. J. Randall Call and James Boevers represented the appellant Zions First National Bank. Bryce Panzer represented the defendant Christiansen Brothers, Inc. At the conclusion of the hearing, the court instructed the parties to supply supplemental briefing. Having now reviewed the supplemental briefs and being fully apprised of the facts and law, the Court hereby enters this Memorandum Decision and Order.

### Statement of Facts

Davidson Lumber Sales, Inc. ("Davidson"), the debtor, filed a Chapter 11 bankruptcy petition on February 6, 1986. As of the petition date, Davidson owed Zions First National Bank, N.A. ("Zions") $1,986,316.89 pursuant to a line of credit. On February 21, 1986 Zions and Davidson executed a document entitled "Stipulation and Agreement Concerning Post–Petition Financing and Security Agreement" whereby Zions agreed to extend a line of credit to Davidson secured by all of Davidson's post-petition collateral, including inventory. This lien was recognized by the Bankruptcy Court as a first-priority lien and a super-priority administrative expense claim. The Stipulation was approved by the Bankruptcy Court after notice to all creditors. Zions filed a UCC–1 financing statement with the Utah Department of Commerce, Commercial Code Division.

Subsequent to the Stipulation and Agreement, from November 1986 to March 1987, Davidson sold goods and materials (primarily lumber) to Christiansen Brothers, Inc. ("Christiansen") for the construction of apartment buildings ("the Project"). Christiansen was the general contractor on the Project. The contract between Christiansen and the owner of the Project required Christiansen to deliver the Project free of any liens, including mechanics liens.

The goods and materials Davidson sold to Christiansen had been purchased by Davidson from Diehl Lumber Products, Inc. ("Diehl"). Diehl was a pre-petition creditor of Davidson's and knew about the post-petition agreement between Zions and Davidson. There was an agreement between Davidson and Christiansen in which Christiansen agreed to be invoiced by Davidson at the time Davidson received the lumber from Diehl if the lumber was kept separate on Davidson's yard.

Davidson failed to pay Diehl for the materials. Consequently, on February 27, 1987, Diehl filed a notice of mechanic's lien against the Project in the amount of $105,679.00. At that time, Christiansen had not yet paid Davidson for the materials, and elected to pay Diehl the money Diehl was owed by Davidson. Upon receipt of the payment on March 11, 1987, Diehl released its mechanic's lien. Diehl also agreed to indemnify Christiansen from claims by Davidson against

Christiansen. Diehl thereafter itself went bankrupt.[1]

On April 30, 1987, Davidson's bankruptcy was converted to a Chapter 7 liquidation. After conversion, Zions made demand on Christiansen to pay the amounts it owed to Davidson. Cross-motions for summary judgment were filed by Zions and Christiansen (Diehl and Anderson are not parties to this adversary proceeding). The Bankruptcy Court denied Zions' motion for summary judgment and granted Christiansen's motion for summary judgment. Zions appeals the Bankruptcy Court's decision.

## Conclusions of Law

In its order, the Bankruptcy Court held that "Christiansen, as the general contractor of the Project, had the right under Utah law to pay Diehl, the lien claimant, the amount claiming to be owed, to obtain an immediate release of the lien, thereby creating a defense to Christiansen's obligation to pay Davidson." Bankruptcy Court's Memorandum Opinion, p. 7. Furthermore, the Bankruptcy Court found that the post-petition accounts receivable owed by Christiansen to Davidson were not property of the bankruptcy estate. *Id.* pp. 10–11. Christiansen's paying the amounts it (Christiansen) owed to Davidson did not violate the automatic stay under 11 U.S.C. § 362. *Id.* p. 11. Upon review of the law and facts in this case, the court finds that the Bankruptcy Court erred in holding that Christiansen was legally permitted to pay Diehl directly for the materials instead of honoring its contract with Davidson.

*I. Christiansen did not owe any legal duty to Diehl and did not have any legal right to pay Diehl directly.*

■ Christiansen argues and the Bankruptcy Court agreed that because of Davidson's failure to pay the claims of its suppliers, which gave rise to the mechanic's lien against the Project, Christiansen was justified in paying Diehl and not Davidson. Christian-

sen asserts that its position is supported under Utah law.

The ultimate outcome in this case is determined by an examination of first, the pertinent laws and second, the legal relationship between and among the various parties. The laws involved are the federal bankruptcy laws, the law of contracts and the statutory laws of the state of Utah regarding the filing of mechanics liens.

Pursuant to the bankruptcy act, Davidson filed for chapter 11 relief and Zions sought and received the right to have a priority lien vis-a-vis Davidson's other post-petition creditors. This first-priority lien gave Zions the right to attach any post-petition inventory of Davidson's including any money owed to Davidson under any account receivable. Zions position in this case is simple and clear. It claims that the money Christiansen owed Davidson was, and is, a valid and unpaid debt owed to the Davidson estate.

In addition to providing the process for Davidson's chapter 11 reorganization, and for Zion's first-priority lien on Davidson's post-petition assets, the bankruptcy laws also operated in this case to impose a stay on all offset claims pending Davidson's reorganization.

Pursuant to the law of private contracts, Davidson owed money to Diehl under its contract with Diehl, and Christiansen owed money to Davidson under its contract with Davidson. There was no private contract between Diehl and Christiansen, nor was there any contract between the project owner and Davidson or the project owner and Diehl. There was clearly a contract between Christiansen and the project owner which obligated Christiansen to deliver the project to the project owner free of mechanics liens.

The Utah mechanics lien statute, Utah Code Ann § 38–1–3, states in pertinent part as follows:

> Contractors, subcontractors ... shall have a lien upon the property upon or concerning which they have rendered service, per-

---

1. The court will address its findings in terms of the duties owed to Diehl. The same conclusion applies to Anderson Lumber Co. ("Anderson"). Anderson also sold lumber to Davidson post petition which was subsequently sold to Christian-

sen. Christiansen issued a check made jointly payable to Anderson and Davidson in the sum of $32,429.30 as payment for the goods and materials.

formed labor or furnished materials, for the value of the service rendered, labor performed or materials furnished by each respectively, whether at the instance of the owner or of any other person acting by his authority as agent, contractor, or otherwise. . . .

The purpose behind the mechanics lien statute is "to protect those who have added directly to the value of real property by performing labor or furnishing material. This statute was intended and designed to prevent the owner of land from taking the benefit of improvements placed on his property without paying for the labor or material that went into them." *Davis v. Barrett,* 24 Utah 2d 162, 467 P.2d 603, 605 (1970). By its specific terms the statute applies to the owner of real property. It does not apply in the same way to the owner's general contractor.

Under the mechanics lien statute, Diehl had every right to protect itself by filing a mechanics lien against the project. As a materialman, it had that right under Utah state law, regardless of its lack of contractual priority with the project owner. The lien placed immediate leverage on the owner of the project to take steps to have the lien reviewed. In this case the owner had wisely protected itself by its private contract with Christiansen which obligated Christiansen to deliver the project free of all liens. At that point Christiansen faced a dilemma. Should it pay off Diehl in order to release the mechanics lien and thereby satisfy its contract obligation to the project owner, or should it pay Davidson and thereby satisfy its contractual obligation to Davidson. Christiansen understandably did not want to do both, and it chose to pay Diehl directly and at the same time obtain an indemnification agreement

from Diehl pursuant to which Diehl would pay Christiansen for any amounts Christiansen was later found to owe Davidson. Unfortunately for Christiansen, the indemnification agreement was of no use because Diehl went bankrupt.

■ The critical question then becomes whether Christiansen's payment to Diehl somehow extinguished its contractual obligation to pay Davidson. The answer is no. There is nothing under statutory law, either in the bankruptcy code or the Utah mechanics lien statute, or under Christiansen's private contract with Davidson that would legally excuse Christiansen's obligation to pay Davidson. Worse yet for Christiansen, the bankruptcy law imposed a stay on offsets during the pendency of Davidson's bankruptcy proceeding which eliminated Christiansen's offset defense against any claim of Davidson.[2]

Christiansen may genuinely look back with regret on its decision to deal with two companies (Davidson and Diehl) that went bankrupt, but there is no provision under law allowing Christiansen to voluntarily pay Diehl and be relinquished from its binding obligation to pay Davidson.

In support of it argument, Christiansen relies on Utah Code Ann. 38–1–24, *Davis v. Barrett,* 24 Utah 2d 162, 467 P.2d 603, 604–05 (1970), *Einerson v. Central Lumber & Hardware Co.,* 14 Utah 2d 278, 382 P.2d 655 (1963), and *Sierra Nevada Lumber Co. v. Whitmore,* 24 Utah 130, 66 P. 779 (1901) to support its position that it had a legal right to pay Diehl instead of Davidson.

Utah Code Ann. § 38–1–24 states:

---

**2.** Offsets are barred by the automatic stay provision of Chapter 11, 11 U.S.C. § 362(a)(7). There is no similar restriction for recoupments. In *In re Midwest Service and Supply Co., Inc.,* 44 B.R. 262 (D.Utah 1983), the court explained the difference between an offset and a recoupment. "A setoff under 11 U.S.C. § 553 involves mutual debts or mutual credits between the estate of a debtor and a creditor whereby claims arising out of different transactions or occurrences are offset." *Id.* 265–66. " 'Recoupment . . . is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or

reduction of such claim.' " *Id.* at 266 (quoting 4 Collier On Bankruptcy, ¶ 553.03 at 553–12 (15th ed. 1983)). Christiansen's claim or defense to payment does not arise from the transaction in which that claim or defense is being asserted, for example, the transaction in which Christiansen purchased lumber from Davidson. Christiansen's claim instead arises from the transaction in which Davidson purchased lumber from Diehl. Because these are different transactions, Christiansen's payment to Diehl is an offset not a recoupment and thus is barred by 11 U.S.C. § 362(a)(7).

The claimant of any lien filed as provided herein, on the payment of the amount thereof together with the costs incurred and the fees for cancellation, shall at the request of any person interested in the property charged therewith cause said lien to be canceled of record within ten days from the request, and upon failure to so cancel his lien within the time aforesaid shall forfeit and pay to the person making the request the sum of $20 per day until the same shall be canceled, to be recovered in the same manner as other debts.

The statute does not in any manner whatever stand for the proposition that a general contractor has the right to pay a lien claimant directly and thereby create a defense to its obligation to pay its supplier as Christiansen claims.

*Davis* involved a subcontractor who brought suit to have his lien declared valid and to enforce the lien. The Utah Supreme Court held that the purpose of U.C.A. § 38–1–1 (1953) "was to protect those who have added directly to the value of real property by performing labor or furnishing material. This statute was intended and designed to prevent the owner of land from taking the benefit of improvements placed on his property without paying for the labor or material that went into them." *Id.* 467 P.2d at 605. There is nothing in the *Davis* case that gives the rights and obligations of an owner of property to the owner's general contractor.

In *Einerson,* plaintiff sued the defendant to recover penalties for failure to release its materialman's lien upon the plaintiff's home after the debt was paid. The Supreme Court held that before the plaintiff was entitled to a penalty under the statute, he must meet with particularity the requirements of the statute. This case says nothing whatsoever about the right of a general contractor to satisfy a mechanic's lien and thereby extinguish the general contractor's obligation to pay the supplier with whom the general contractor had a binding contract.

Finally, in *Sierra Nevada,* the Utah Supreme court commented in dicta that "[t]he owner has the right in self-protection to retain enough of the original contract price to cover the liens of subcontractors, and apply the same in satisfaction of such liens.[3] The case says nothing to support Christiansen's position here.

The court understands Christiansen's dilemma. If Christiansen had not paid Diehl, the mechanic's lien would not have been dismissed and Christiansen would have breached its contract with the owner of the Project to deliver the Project free of any liens. However, Christiansen failed to legally protect itself. In an effort to protect itself, Christiansen obtained an indemnification agreement from Diehl and required Davidson to keep the lumber supplied by Diehl and to be delivered to Christiansen separated from other lumber on its yard. Neither of these protections were good enough to sufficiently protect Christiansen from a lien claimant. Diehl went bankrupt and the separation of the material on Davidson's yard did nothing to help Christiansen's cause.

Christiansen could have protected itself by inserting into its contract with Davidson a provision whereby Christiansen would not be obligated to pay Davidson until Davidson paid Diehl or the contract could have been drafted to allow Christiansen to pay Diehl directly. Christiansen would then have had the right to withhold payment to Davidson and to pay Diehl directly, with the payment never becoming Davidson's property. But Christiansen failed to do this, and it simply did not have the right under Utah law to bypass Davidson and pay Diehl directly. Christiansen remains liable to Davidson (or now the bankruptcy estate or Zions) for the amount owed under the contract.

Zions does not dispute the fact that Davidson owed a duty to Diehl for payment. It even concedes that the owner of the property may have had the legal right to pay Diehl

---

3. Utah law also allows for the owner of the Project to pay any and all suppliers in order to release any liens against the property. *See* Utah Code Ann. § 38–1–1 *et seq.*; Utah Code Ann. § 14–2–1 *et seq.*; § 58A–1a–15 (now § 58–55–15) and 58A–1a–16 (now 58A–55–16). The statute and case law are applicable to the owners, not general contractors. Nothing in any the these cases allows for a general contractor to pay a lien claimant thereby extinguishing its obligation to one of its suppliers.

directly because of the mechanic's lien statute. Zions correctly asserts, however, that contrary to Christiansen's argument, the cases Christiansen cites only establish that the *owner* of property owes a duty of payment to suppliers pursuant to the mechanic's lien statute. They do not permit such action on the part of the owner's general contractor. A mechanic's lien attaches to the owner's real property. No property of Christiansen was ever attached.

There is no support for the holding made by the Bankruptcy Court or for the arguments made by Christiansen. Christiansen voluntarily contracted with the owner to keep the property clear of any mechanic's liens, and Christiansen could have imposed the obligation on Davidson, but it did not. Diehl protected itself by filing a mechanic's lien; Zions protected itself with its super-priority post-petition lien on Davidson's inventory and accounts receivable; and the owner protected itself with its contract with Christiansen. If Christiansen had protected itself in its contract with Davidson, even Zion's super-priority post-petition lien would not have had "priority" over Christiansen's paying Diehl.

The case law relied on by the bankruptcy court does not support the bankruptcy court's decision and in fact is consistent in every respect with the court's analysis here. For instance, the bankruptcy court relied on *Davis, Emerson,* and *Sierra Nevada* as explained above do not support the appellee's position. Furthermore, the Bankruptcy Court relied on *In re Alliance Properties, Inc.,* 104 B.R. 306 (Bankr.S.D.Cal.1989), in its holding that Zions erred in not notifying Christiansen that payments on the debtor's accounts should be made only to Davidson or Zions. The Bankruptcy Court held that the circumstances surrounding this case "resulted from the usual and ordinary perils of commerce and state law governing the conduct of business." Bankruptcy Court's Memorandum Order, p. 8. *Alliance* involved a government contract pursuant to the Miller Act, 40 U.S.C. § 270a et seq. The court in *Alliance* held that "[t]he government has the

right—and, indeed an obligation under the Miller Act—to first apply the proceeds to the unpaid claims of the subcontractors." *Id.* at 310. The court further held that the government, the owner in this situation, "had an obligation to withhold from the final payment to the [debtor] money sufficient to satisfy the unpaid claims of the subcontractors." *Id.* at 311. The Bankruptcy Court erred in relying on this case. The case at bar is not a Miller Act case and the court does not find that Zions' circumstances resulted from the usual and ordinary perils of commerce. The perils of commerce are involved, but it is Christiansen who is in the perilous situation not Zions.

## II. *Georgia Pacific v. Sigma Service Corp.*

The court finds *Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962 (5th Cir. 1983) analogous to the instant case in many respects. In that case, Sigma was the general contractor for a construction project in Arkansas for Georgia Pacific and a project in Mississippi for Mississippi Chemical. Dura–Wood provided material for both projects.[4] In the Arkansas project, Sigma had a joint check agreement in which Sigma requested Georgia Pacific to issue checks jointly to Sigma and Dura–Wood. Jointly payable checks were sent to Sigma, but Sigma did not endorse over one of the checks to Dura–Wood, but instead filed for Chapter 11 protection and filed an adversary proceeding to require Georgia Pacific to turn over all sums owed Sigma for material furnished by Dura–Wood. In the Mississippi project there was no joint check agreement but subsequent to the Chapter 11 filing, Dura–Wood sent a stop payment notice to Mississippi Chemical. The effect of the notice, under Mississippi mechanic's lien statutes, was to freeze funds owed by Mississippi Chemical to Sigma, for the benefit of Dura–Wood. Sigma sought to turn over all amounts owed by Mississippi Chemical to Sigma for the materials furnished by Dura–Wood. *Id.* at 964–65.

On appeal, the Fifth Circuit Court of Appeals held that Sigma had legal title to the funds and required the funds be turned over to the Bankruptcy Court for a determination

4. Another materialman supplied material for the Arkansas project as well. To ease in understanding, the court will only analyze the case with respect to Dura–Wood.

of the equitable claims of Dura–Wood. The court further held:

> Georgia Pacific, a debtor of Sigma, could not refuse to pay over sums due to the estate and to which the estate had legal title on the contention that some other debtor had a priority or a constructive trust claim to these sums superior to that of Sigma, the debtor in possession. It is for the bankruptcy court, not a stakeholder with possession of assets in which the debtor has at least a legal interest, to determine such contentions.

> .        .        .        .        .

> Accordingly, the district court was in error in not requiring Georgia–Pacific to turn over to Sigma, the debtor in possession (and thus the administrator of the bankruptcy estate), the sums owed by it to Sigma for contractual services performed. If indeed all or part of the money so owed was subject to a constructive trust in favor of the suppliers ..., the bankruptcy court would be required to recognize those equitable interests and, perhaps, the debtor in possession's sole permissible administrative act with regard thereto would be to pay over or endorse the sums due to the beneficial owners of the property.

*Id.* at 968.

The Fifth Circuit rejected Dura–Wood's claim of constructive trusts. The court found that under both Arkansas and Mississippi law, Dura–Wood had the burden of establishing the existence of constructive trusts. Under the Arkansas mechanic's lien statute, the court held that:

> ... unpaid materialman [have] neither a property interest nor a trust-fund interest in funds paid by the owner to the contractor for his contract work.

*Id.* at 970.

As a result of the decision, Georgia Pacific would be required to pay the same amount twice. First to avoid Dura–Wood's mechanics' lien, and second to pay the amount it owed to Sigma under the contract. If Georgia Pacific or Mississippi Chemical had elected to pay Dura–Wood directly, rather than merely withholding payment to Sigma, they would still be required to pay the amount twice. The same is true here. Christiansen may have to pay twice.

Christiansen dealt with Davidson even though it was in Chapter 11. The court does not want to discourage other companies from doing business with companies in Davidson's situation. And while this is an important public policy issue, so is the public policy issue articulated by Zions. Zions argues that if it does not prevail, other creditors in Zions position will be discouraged from establishing post-petition credit relationships with Chapter 11 debtors. Both arguments have merit. As the court has previously stated, however, this case must be decided purely on the law. It is clear that Christiansen could have protected itself during its dealings with Davidson. Simply because Christiansen failed to do so should not discourage others from doing business with companies in Chapter 11. The lesson that should be learned is that companies in similar circumstances can and should legally protect themselves.

## CONCLUSION

Based on the foregoing the court finds that the Bankruptcy Court erred in granting Summary Judgment. There is nothing under Utah law that gave Christiansen the right to pay Diehl and not pay Davidson as required under the contract. The decision of the Bankruptcy Court is REVERSED and REMANDED. The Bankruptcy Court is ordered to GRANT Summary Judgment in favor of Zions on remand.

IT IS HEREBY ORDERED.