In re J.F. NAYLOR AND COMPANY, INC. (EIN 72–0512350), Debtor.

J.F. NAYLOR AND COMPANY, INC., Plaintiff,

v.

MECHANICAL SHEET METAL, INC., Defendant.

Bankruptcy No. 85–01231.
Adv. No. 85–0194.

United States Bankruptcy Court, M.D. Louisiana.

Aug. 26, 1986.

---

Charles S. McCowan, Jr., and Gary A. Bezet, Baton Rouge, for J.F. Naylor and Co., Inc. (debtor-plaintiff-third party defendant).

Michael J. Harig, Baton Rouge, for Mechanical Sheet Metal, Inc. (defendant-third party plaintiff).

Bryan McDaniel, Baton Rouge, and Michael S. Tudor, Alexandria, for Tudor

Const. Co. (third party defendant-third party plaintiff).

Della O. Hayes, Baton Rouge, for debtor-plaintiff.

Richard L. McGimsey, Baton Rouge, pro se, and for Roy Jones as defendants.

## DETERMINATION OF ENTITLEMENT TO INTERPLEADER RELIEF

WESLEY W. STEEN, Bankruptcy Judge.

### I. Facts

This proceeding is a mass of claims and counterclaims that results from construction contracts. For purposes of determining whether an interpleader proceeding is appropriate, and only for those purposes, the following facts are undisputed, except as may be indicated.

Swaggert (the landowner) employed Tudor as a general contractor on three construction contracts: (i) the Permanent Worship Center job; (ii) the Temporary Worship Center job; and (iii) the Dormitory job. Tudor employed Naylor as a subcontractor to perform parts of all three contracts. Naylor purchased goods from materialmen and engaged subcontractors in connection with the work. The contracts were bonded by insurance companyes: Heritage bonded the Permanent Worship Center job; Credit General bonded the Dormitory job; USF & G bonded the Temporary Worship Center job.

Naylor employed Mechanical Sheet Metal, Inc. as a subcontractor. Mechanical filed liens in the amounts of the $30,313.43; $11,397.23 involves the Dormitory job and $18,916.20 involves the Temporary Worship Center job.

Naylor also employed Acadiana Sheet Metal as a subcontractor. Acadiana sued USF & G for $29,576.01 for sums due it by Naylor.

Naylor also employed Insulation Sales & Service, Louisiana Controls, & Thibodeaux Mechanical as subcontractor; they sued USF & G, Credit General, and Heritage for $83,213.12.

Naylor also employed Carrier New Orleans Co. as a subcontractor; Carrier filed a lien against the Permanent Worship Center job in the amount of $3,641.59. It filed liens in the same amounts against the Temporary Worship Center job and against the Dormitory job.

Naylor also employed Honeywell, Inc. as a subcontractor; Honeywell filed a lien against the Permanent Worship Center job for $22,805.50. It filed an identical lien against the Temporary Worship Center job.

Naylor also employed Kirkwood Company as a subcontractor; Kirkwood filed a lien against the Dormitory job for $10,924.44.

Naylor also employed Coburn as a subcontractor; Coburn filed a lien against the Temporary Worship Center job for $9,435.99.

Both Naylor and Mechanical were Debtors before this Court when this adversary was filed on November 20, 1985.[1] Naylor filed this adversary proceeding against Mechanical seeking a judgment determining that Mechanical's liens were not valid and ordering those liens canceled. Mechanical answered denying the jurisdiction of the Bankruptcy Court and alleging that Naylor did not have a claim on which relief could be granted; Mechanical then counterclaimed against Naylor for $30,313.43 due on the job and for $500,000 damages for late payment; in addition to asserting these claims against Naylor, Mechanical asserted the same claims against Tudor and Swaggert in third party claims. Naylor answered by denying that it owed Mechanical any funds and denying that the Bankruptcy Court had jurisdiction over the subject matter of the counterclaim.

A pretrial conference was held. At this point in the progress of the adversary proceedings, *e.g.* after complaint, answer,

---

1. Mechanical's Chapter 11 case was dismissed subsequent to the date this opinion was original-ly written but before it was issued.

counterclaim, and third party claim, but before answer by third party defendants, counsel for Naylor and for Mechanical appeared at a pretrial conference and explained to the Court that Tudor owed Naylor substantial sums of retainage but would not pay until Mechanical's liens were canceled. The Court understood counsel to represent that the total retainage on the jobs exceeded all claims against Tudor/Swaggert and that the objective of the adversary proceeding was to remove the Mechanical liens because they effected a logjam that prevented payment of retainage and effective satisfaction of all claims. Had this assertion been correct, the balance due Naylor would certainly have constituted property of the estate and the Court suggested interpleader as a means of dividing the funds owed by Tudor/Swaggert to Naylor from those due the lien claimants. Unfortunately, answers, third party claims, and counterclaims show that the claims of materialmen/subcontractors likely exceed the amount Naylor admits as due, and in addition, there is an additional claim that Naylor has assigned to Capital Bank any receivable that might eventually be due from Tudor.

Swaggert answered by stating that it had paid Tudor all sums due, denying Bankruptcy Court jurisdiction over the subject matter, and denying that Mechanical had stated a claim on which relief could be granted.

Tudor then answered Mechanical's third party claim by admitting jurisdiction and admitting holding retainage due Naylor in the amount of $182,233.37, but claiming that such retainage was subject to offsets of about $27,000. The Tudor answer confirms that Swaggert has paid Tudor in full. Tudor admits that it owes Naylor and claims setoff as follows:

|  | Amount Due Under Contract | Alleged Setoff |
|---|---|---|
| Worship Center | $111,515.79 | $ (6,000) |
| Dormitory | 61,871.98 | (20,000) |
| Temp. Worship Center | 8,845.60 | (1,000) |
|  | $182,233.37 | $(27,000) [2] |

Tudor then asserts that the liens and claims by subcontractors and materialmen generally as set forth above.[3] Tudor also asserts that Naylor has assigned its retainage to Capital Bank and joined Capital Bank as an interpleader defendant and claimant to any funds that might remain due to Naylor.

Credit General Insurance answered, admitting the jurisdiction of the Bankruptcy Court and claiming a prior right to the retainage.

Heritage Insurance Company of America answered, asserting a Cook County, Illinois, court injunction staying any proceedings against Heritage because Heritage is under receivership under Illinois law.

Naylor answered, admitting the jurisdiction of the Court over the interpleader but denying any right in Tudor to offset retainage on one job against claims on another.

Thibodeaux Mechanical, Louisiana Controls, Insulation Sales & Service, and Acadiana Sheet Metal answered, alleging that the Court lacks authority to stay any proceeding against the bonding companies, asserting that these defendants have an independent cause of action against the bonding company.

Capital Bank first on April 8 filed a memorandum asserting the impropriety of interpleader. Capital Bank asserts that interpleader is improper: (i) because the claims against Tudor/Swaggert are not limited to the amount to be deposited; and (ii) because Tudor seeks to avoid deposit of the retainage it admits that it holds. Then on May 5 Capital Bank filed an answer to the interpleader reasserting its objection to interpleader and asserting a lien on any

---

2. In a later amendment, Tudor asserts an additional claim on the Dormitory job of about $22,800, raising total Tudor claims to about $49,800.

3. See La.R.S. 9:4802(F) and consider footnote 4 below concerning the effect of the jurisdictional claim.

funds due Naylor by Tudor. Capital states further that it does not object to the exercise of jurisdiction over the interpleader if the Court exercises such jurisdiction.

On May 7, 1986, Mechanical moved to abstain from hearing the interpleader action on the grounds that the interpleader defendants are not debtors. (Presumably Mechanical was referring to the interpleader defendants other than itself.)

LeDoux Electric, Inc. is a Naylor subcontractor; on May 7, 1986, it answered the interpleader, claiming $2,300.00 for materials and services used in the Dormitory job. It asks for an order directing payment of its claim.

LCR Corporation is a Naylor subcontractor; on May 8 it answered the interpleader, claiming $1,791.20 for materials used in the Dormitory job.

Lawrence Trahan d/b/a Trahan Sheet Metal filed an answer on May 7. The answer is a general denial. It is not possible to determine whether Trahan has any unsatisfied claim from these contracts.

Johnson Controls, Inc. is a Naylor subcontractor; on May 29, 1986, it filed its answer; the answer does not state the amount of its claim for materials and services used in the Temporary Worship Center job, but contends that it has such a claim, admits jurisdiction of the Court, and seeks payment of its claim.

McQuay, Inc. is a Naylor subcontractor; on May 19 it answered the interpleader, claiming $8,751.46 for materials used in the Dormitory job and seeks a judgment in its favor in that amount.

The claims asserted against the fund, therefore, are as follows:

| | |
|---|---|
| Mechanical | $ 30,313.43 |
| Acadiana | 29,576.01 |
| Insul. Sales, La. Control, & Thibodeaux Mech. | 83,213.12 |
| Carrier | 3,641.59 |
| Honeywell | 22,805.50 |
| Kirkwood | 10,924.44 |
| Coburn | 9,435.99 |
| Ledoux | 2,300.00 |
| LCR | 1,791.20 |
| McQuay | 8,751.46 |
| | $202,752.74 |

Tudor claims a right of offset of $49,800. There are other claims that cannot be evaluated at this time:

1. Interest and attorney's fees, if applicable;

2. Claims of parties who did not state the amount of their claims:

   a. Trahan Sheet Metal

   b. Johnson Controls

3. The $500,000 claim by Mechanical against Naylor.

Of course, some of these claims may eventually be determined to be less than the amount claimed.

Against all these claims, there is admitted by Tudor an amount due of $182,233.37. Apparently there is not, as Naylor/Mechanical may have thought and represented, enough retainage to pay all the claims.

Naylor and Tudor have, by contract, agreed to indemnify Swaggert and the bonding companies for any liens on the job. Naylor has given a similar contractual indemnification to Tudor. See also La.R.S. 9:4802(F).

A summary of these contentions is useful:

1. Swaggert, the Owner, contends that it has paid Tudor, the general contractor, all sums due; Tudor does not dispute that contention.

2. Tudor admits that $182,233.37 is due Naylor under the contract, but has several other contentions:

   a. It is due a $49,800 offset;

   b. It is due a reduction for any sums payable to materialmen or sub-subcontractors directly or through bonding companies;

   c. That Capital Bank might be due part or all of the retainage in lieu of either Naylor or the subcontractors/materialmen because of Capital's assignment.

3. Capital, Naylor, and the materialmen/subcontractors each claim the $182,233.37 due by Tudor to Naylor or assert direct claims against Tudor/Swaggart/bonding companies.

4. The bonding companies assert claims against Tudor for any sums payable to materialmen/subcontractors; Tudor asserts an offset of any such sums against the amount it may owe Naylor.

Tudor, then, has claims against it asserted by four classes of defendants: (i) Naylor, (ii) the bonding companies, (iii) the materialmen/subcontractors, and (iv) Capital Bank. These claims are related and expose Tudor to potential multiple liability. The bonding companies have claims asserted against them by the subcontractors/materialman.

## II. Discussion of the Law

FRCP Rule 22 is applicable to bankruptcy proceedings by virtue of Bankruptcy Rule 7022. Rule 22 provides that rule interpleader is appropriate when the party seeking the relief might be exposed to multiple liability. Before Rule 22 applies, of course, the Court must have had jurisdiction over the subject matter.

■ An admitted liability of an owner to a contractor is property of the estate.[4] The district court has exclusive jurisdiction over property of the estate.[5] Therefore, the district court has exclusive jurisdiction over the $182,233.37 admittedly due by Tudor to Naylor.[6] Under 28 U.S.C. § 157(a) the district court may refer such matters to the bankruptcy court; by Local Rule 29 the U.S. District Court for the Middle District of Louisiana did so.

■ While the interplay of 28 U.S.C. § 1334(d) and *Sigma Service* determines that there is exclusive federal jurisdiction over the $182,233.37 of retainage, federal jurisdiction over the claims in excess of that amount is not so obvious, but there is jurisdiction, nevertheless.

28 U.S.C. § 1334(b) provides that the district court has jurisdiction over proceedings related to bankruptcy cases. A "related proceeding" is one in which the outcome "... could conceivably have any effect on the estate's being administered in bankruptcy."[7] In this proceeding, the materialmen/subcontractors have claims against Naylor and Naylor has a claim against Tudor; the bonding companies, to the extent that they pay the materialmen/subs, will have claims against Tudor that will result in claims for offset or recoupment against the sums due by Tudor to Naylor. The extent of the right to offset by Tudor against Naylor might affect Capital, Naylor's creditor holding an assignment of the Naylor retainage held by Tudor. Thus, the

---

4. *Georgia Pacific Corporation v. Sigma Service Corporation*, 712 F.2d 962 (5th Cir., 1983). This Court concludes that it is bound by the decision in *Sigma Service* because the instant facts appear to be virtually indistinguishable. For a contrary viewpoint with more compelling logic (albeit on distinguishable facts) see *Pearlman v. Reliance Insurance Company*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962). The conclusion of *Sigma Service* (a case involving Mississippi contracts) is difficult to apply to Louisiana law for two reasons. First, to the extent that a subcontractor has not kept his job lien free, he has not fulfilled his duty under Louisiana law and is required to indemnify the contractor (La.R.S. 9:4802(F)). How can the amount due a subcontractor be "property of the estate" when the amount due, if any, is disputed as a result of alleged rights of offset or recoupment resulting from claims for indemnity? *See In re Satelco Inc.*, B.L.D. ¶ 71,149, (N.D.Tex., 1986). Second, *Sigma Service* discusses "title" held by the contractor as if there were a separate fund of cash to which "title" is held by the subcontractor obligee. While the existence retainage no doubt means that there exists some asset that is property of the estate, that "property" would seem to

be an account receivable held by the obligee not a "fund" held by the obligor. While *Pearlman* seems to confirm this reasoning, this Court considers itself bound by *Sigma Service* in the instant case because of the virtually identical facts. The issue has substantial jurisdictional consequences because of 28 U.S.C. § 1334(d).

5. U.S.C. § 1334(d).

6. Conceivably there is a potential disagreement over the alleged $49,800 offset which might or might not be covered by *Sigma Service.* For reasons discussed subsequently in the main text, however, there is at least "related proceeding" jurisdiction over this issue; since there is subject matter jurisdiction and since Tudor has consented to bankruptcy court jurisdiction over this issue as a core proceeding rather than as noncore, this potential distinction of jurisdiction over the $27,000 offset is not raised in the case at bar.

7. *In re Pacor*, 743 F.2d 984, 994 (3d Cir., 1984); see also *In re Bobroff*, 766 F.2d 797 (3d Cir., 1985).

proceeding for interpleader is related to a case under Title 11.

Tudor and the bonding companies are subject to suit in state court for payment of Naylor's subcontractors/materialmen. Naylor's retainage due from Tudor is within the exclusive jurisdiction of the federal court. It is always possible that the state court determination of the amount due subcontractors/materialmen might differ from the amount determined in federal court to be a correct offset against the retainage. Thus, it appears that Tudor is or may be subject to double or multiple liability.

■ Since the proceeding is related to a case under Title 11, the district court has jurisdiction.[8] Rule interpleader relief is appropriate since there is subject matter jurisdiction and since there is the possibility that Tudor could be subject to multiple liability.

### III.  Exercise of Authority by the Bankruptcy Judge

■ Under 28 U.S.C. § 157(a) and Local Rule 29, the United States District Court for the Middle District of Louisiana referred to the undersigned bankruptcy judge all proceedings related to a case under Title 11, U.S.C. and directed the bankruptcy judge to exercise the authority permitted by 28 U.S.C. § 157(b).

Claims by any nondebtors against Naylor are determined to be core proceedings under the authority of 28 U.S.C. § 157(b)(2)(B). Pursuant to § 157(b)(1), the undersigned bankruptcy judge will hear and will determine these core matters. In addition, Tudor has consented to the exercise of core jurisdiction by the bankruptcy judge over claims against it. Based on such consent, and under the authority of § 157(b)(2)(C), the undersigned bankruptcy judge will hear and will determine, as core matters, any claims by Naylor against Tudor.

All interpleader defendants who have not yet done so will be allowed 30 days from the date of the order entered as a result of this decision to consent to the determination of their claims by consent under 28 U.S.C. § 157(c)(2). If such consent is not timely filed, the Court will hear those claims as related, noncore issues under 28 U.S.C. § 157(c)(1) and will issue findings of fact and conclusions of law for entry of final judgment by the district court.

### IV.  Materialmen/Subcontractor Claims Against Bonding Companies

■ The claims of materialmen/subcontractors against the bonding companies are related to this bankruptcy proceeding in this way: if the bonding companies pay claims of materialmen/subcontractors, the payment of those claims will result in claims by legal or by conventional subrogation against the Debtor. Nevertheless, the claims by the materialmen/subcontractors against the bonding companies are not appropriate for interpleader relief since the bonding company is not in the position of being liable to multiple parties. The claims of subcontractors/materialmen against bonding companies would not, therefore, be a part of the interpleader proceeding but would depend on ancillary or pendent jurisdiction, if jurisdiction exists at all, or one must conclude that such claims are related because they affect the claims of the bonding companies against the retainage or debtor and thus affect the distribution of the estate.

Counsel for the bonding companies and for the bonded contractors have made two strong and well-conceived arguments. First, counsel point out that the bonded contractors have conventional and legal obligations to indemnify the bonding companies for the amount determined to be due to subcontractors/materialmen as well as for the cost of defense. This expense of litigation could be reduced, they say, if the liability of the bonding company were determined in the same proceeding as the division of the retainage and the liability of the general contractor. Second, the contractors argue that there is a potential for inconsistent results if the state court determines the liability of the bonding company and the federal court determines the rights of the bonding company to retainage.

---

8.  28 U.S.C. § 1334(b).

Counsel have not fully briefed the issues of ancillary and pendent jurisdiction nor has anyone briefed the "related proceeding" status of such claims. Assuming that such jurisdiction exists,[9] the Bankruptcy Judge for this district recommends that the district court abstain from hearing the claims. The basis for such abstention would be 28 U.S.C. § 1334(c)(1) either: (i) in the interest of justice, or (ii) respect for state law.

The bond provided under state law provides a guarantee of payment and an independent means of collection. The appropriate test to determine whether to abstain would seem to be a balancing of the interest for jurisdictional economy and consistency against the increased complexity (and therefore potential for delay and increased cost) of suit on contract. The appropriate balance in the case at bar would seem to call for abstention:

(1) The risk of inconsistent litigation is placed on the bonding company that undertook that risk for a fee;

(2) The "related case" or ancillary case status of the subcontractor/materialman's claim against the bonding company is quite remote; this balancing for abstention recognizes the remoteness of that claim;

(3) The cost of defending multiple contractor claims is offset by the potential economies of simplifying the bankruptcy proceedings by eliminating claims on which there is no substantial dispute;

(4) The payment of substantially undisputed subcontractor/materialman claims is not delayed by joinder with large (and potentially very complex) claims between the general contractor, debtor subcontractor, asignee of retainage, etc.

■■■ For reasons explained in detail in an earlier opinion,[10] the Bankruptcy Judge for this district believes that abstention decisions can only be made by the district court. Accordingly, the issue of abstention on the claims against bonding companies is referred to the district court with the recommendation that the court abstain.

## V. Heritage Insurance

Heritage Insurance has objected to any proceedings against it on the grounds that the company is in liquidation in Illinois as a result of which the Circuit Court of Cook County, Illinois allegedly enjoined any proceedings involving Heritage, including the one at bar. The injunction filed by Heritage in support of its motion deals with claims against Heritage's assets. The order that will be issued in this proceeding does not involve those assets and hence is not the subject of the injunction, assuming arguendo that such an injunction would apply to this proceeding. The recommended abstention discussed above would preserve subcontractors their rights and limitations against Heritage as they may exist regardless of bankruptcy.

## VI. Mechanical's Motion for Abstention and Motion to Dismiss for Lack of Subject Matter Jurisdiction

■■■ Mechanical has filed a motion asserting extremely complex arguments for dismissal for lack of subject matter jurisdiction and for abstention.

Regarding the motion for mandatory abstention, that issue will be referred to the district judge for determination, for jurisdictional and constitutional reasons explained in earlier decisions.[11] I recommend that the motion be denied.

This proceeding involves determination of questions involving property of the estate of Naylor, it involves claims against Naylor, it seeks interpleader of (at least potential) property of the estate, it seeks an order requiring a former debtor to cancel alleged wrongful liens that involve a current debtor, and it was filed initially when Mechanical was a debtor before this Court. These issues include the character-

---

9. The assumption is not intended to suggest that this judge concludes that subject matter jurisdiction exists.

10. *In re Cemetery Development Corp.,* 59 B.R. 115 (Bkrtcy., M.D.La., 1986).

11. *Ibid.*

istics of a proceeding "arising in" a case under Title 11.[12] Mandatory abstention does not apply to proceedings "arising in": 28 U.S.C. § 1334(c)(2).

Mechanical also seeks discretionary abstention. Because the claims are so intimately involved in a pending bankruptcy case, and because it was filed when both parties were debtors, I advise against discretionary abstention under 28 U.S.C. § 1334(c)(1).

Mechanical seems to concede that if this adversary proceeding were brought "in" the Naylor bankruptcy proceeding, there would be subject matter jurisdiction, but because it is brought "in" the Mechanical bankruptcy proceeding there is no jurisdiction.[13]

### VII. Deposit

■ Tudor concludes that the Court has great discretion concerning whether a deposit will be required of the amount involved in the interpleader. The amount here involved is $182,233.37. Given the character of that amount (less any appropriate offset) as property of the estate, the Court will require the deposit of the entire amount into the registry of the Court. The Court is aware that Tudor asserts offsets; given the lack of any manner of examining the substance of those claims, the amount deposited may not be reduced by the claim for offset. The deposit will *not* be delivered to the debtor but will be held in the registry of the Court.

**12.** The term "arising in" is not well defined. I have previously discussed that point. *In re Cemetery Development Corp., supra.*

**13.** Movant's argument is difficult to understand and equally difficult to communicate. As best I can understand, movant focuses on which *case* the proceeding is brought "in"; this adversary proceeding was filed by Naylor (a Debtor in bankruptcy case number 85-001231 before this Court). Mechanical, the original Defendant, was also a debtor in this Court: case number 85-01171. When an adversary is filed, it is assigned an adversary number and is also labeled according to its related case number. The current related case number assigned is Mechanical's. Mechanical asserted that the adversary is therefore filed "in" the Mechanical case and therefore the Tudor interpleader is not related since the interpleader defendants are not

### VII. Conclusion

An order will be rendered in accordance herewith.

claimants against Mechanical and since Tudor does not propose to deposit money due Mechanical. Mechanical agreed that there would be no jurisdictional difficulty if the interpleader were filed "in" the Naylor bankruptcy case. For reasons expressed in the text, I cannot conclude that jurisdiction depends on the related case number assigned to an adversary proceeding; but, if that were a critical issue, the appropriate remedy would merely be an order changing the related case number or assigning both cases as being the related case. In addition, FRCP Rule 22 is clear authority that the interpleader relief may be invoked by counterclaim or crossclaim.

After the preceding paragraph was first written, the Mechanical bankruptcy case was dismissed. As part of the dismissal, the Court ordered that this adversary be transferred to the Naylor bankruptcy case as the related case.