866 F.2d 1372
 Bankr. L. Rep. P 72,739
T & B SCOTTDALE CONTRACTORS, INC., Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee,
Richard D. Ellenberg, Trustee for Rodger & Rodger, Inc.,
Trust Company Bank, Intervenors-Defendants-Appellees.
 No. 88-8088.
 United States Court of Appeals, Eleventh Circuit.
 March 2, 1989.
Rehearing and Rehearing In Banc Denied April 5, 1989.
 
 A.L. Mullins, Jr., Swift, Currie, McGhee & Hiers, C. David Hailey, Atlanta, Ga., for plaintiff-appellant.
 Richard D. Ellenberg, Sharon Douglas Stokes, Asst. U.S. Atty., Atlanta, Ga., Gary R. Allen, Chief, Appellate Sect., Tax Div. Dept. of Justice, William S. Rose, Jr., Asst. Atty. Gen., Washington, D.C., Lawrence S. Burnat, Schreeder, Wheeler & Flint, Atlanta, Ga., for defendant-appellee.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before JOHNSON, HATCHETT and COX, Circuit Judges.
 JOHNSON, Circuit Judge:
 
 
 1
 This appeal arises from the district court's clarification upon remand of a previous order. In denying the summary judgment motions of T & B Scottdale Contractors, Inc., and Trust Company Bank and granting the motion of the trustee in bankruptcy of Rodger & Rodger, Inc., the court declared certain funds part of Rodger and Rodger's estate in bankruptcy. We reverse and remand.
 
 I. FACTS
 
 2
 We summarize the facts more fully set forth in this Court's opinion in T & B Scottdale Contractors, Inc. v. United States, 815 F.2d 1425 (11th Cir.1987). In 1982, the City of Atlanta hired T & B Scottdale, Inc. ("T & B") to complete a water treatment project. The contract provided that T & B's minority subcontractors would be able to purchase materials through joint checking accounts controlled by T & B.[1] Rodger & Rodger, Inc. ("R & R"), a minority subcontractor hired to complete the mechanical portion of the project, entered into a contract with T & B that provided:
 
 
 3
 With respect to Item 3 above, Contractor shall purchase and pay for equipment in Subcontractor's name in accordance with terms and conditions dictated by Contractor. Contractor shall open a bank account in Subcontractor's name for the sole purpose of paying for equipment covered by Item 3 above. Contractor shall maintain control of such bank account, but account shall be set up joint signature by Contractor and Subcontractor.
 
 
 4
 T & B established the account as required by the contract at Trust Company Bank ("TCB" or "the bank").
 
 
 5
 Through late 1983, the account functioned as anticipated. R & R would send T & B its unpaid invoices for materials. T & B would then deposit money into the account and write a check to R & R's vendor.[2] The check would be sent to R & R for signature and then forwarded to the vendor.[3] Only T & B ever deposited funds into the account. The account statements were sent to T & B. No funds were ever disbursed to R & R.
 
 
 6
 On September 23 and October 4, 1983, T & B deposited a total of $135,264.89 in the joint account. On October 7, in response to R & R's failure to pay its back taxes, the IRS served notice of levy on the account. T & B filed a wrongful levy action against the government on October 14. Although the district court did not preliminarily enjoin the IRS levy, it did order $92,008.48 (the amount subject to the levy) deposited into the court registry. On November 17, the IRS served notice of an additional levy of $44,909.45 on the account. The court ordered the remainder of the funds placed in the registry "as soon as practicable." R & R filed for bankruptcy on the same day. The bank, fearful of running afoul of the automatic stay provisions of the bankruptcy code, delayed the deposit of the final $43,256.41. This last portion of the funds was eventually deposited with the district court early in 1985.
 
 
 7
 The bank, which sought $89,256 allegedly owed it by R & R on a defaulted loan, and the trustee in bankruptcy intervened several weeks later in the wrongful levy action. T & B and the bank moved for summary judgment, each claiming title to the money. The trustee moved for summary judgment on the basis that the money was part of the bankruptcy estate. The district court rejected the arguments of the bank and T & B and granted summary judgment to the trustee, remanding the case to the bankruptcy court "for its determination of the parties' interests, and distribution of the estate's assets." The bank and T & B then brought their first appeals.
 
 
 8
 On appeal, this Court did not reach the merits of the case due to the district court's somewhat uncertain holding regarding the nature of T & B's claims. We could not conclude we had jurisdiction to decide the merits because the trial court's order was unclear as to whether all of T & B's arguments regarding its ownership of the funds had been completely rejected. We held that if T & B could still argue to the bankruptcy court that the funds were really its own, then the district court's order was not final and appealable. We indicated that if T & B's arguments had been foreclosed, then the order would probably be considered final and appealable. 815 F.2d at 1428. We remanded to the district court for clarification. On remand, the district court explained without equivocation that it had completely rejected T & B's claims of ownership of the funds.[4]
 
 II. DISCUSSION
 A. Jurisdiction
 
 9
 We may now squarely address the question of jurisdiction. The answer turns on whether the district court's decision constitutes a final and appealable order which "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." In re TCL Investors, 775 F.2d 1516, 1519 (11th Cir.1985) (order directing the bankruptcy court to conduct a trial on the merits of a property claim held not a final order); see also In re Miscott Corp., 848 F.2d 1190, 1192-93 (11th Cir.1988) (order resolving contract dispute but remanding for factual development of attorney's fees issue held not final); In re Regency Woods Apts., 686 F.2d 899, 901 (11th Cir.1982) (order finding creditors were not adequately protected and remanding to establish monetary terms of required protection held not a final order). See 28 U.S.C.A. Sec. 158(d) (Supp.1988) (court of appeals has jurisdiction to hear appeals from final order entered by district court in bankruptcy case).
 
 
 10
 The clarified order of the district court is a final order. The issue the district court addressed was whether the money was part of the bankruptcy estate of R & R. The district court held that it was. There is nothing left of T & B's claims that the money is not part of the bankruptcy estate. This decision is final and ended this part of the litigation on the merits.[5] The Seventh Circuit recently decided that a district court's decision that disputed assets are part of the bankruptcy estate is a final and appealable order. In re Joliet-Will Cty. Comm. Action Agy., 847 F.2d 430, 431 (7th Cir.1988). In Joliet-Will, the United States and state agencies argued before the district court that certain funds they had granted to the debtor should not be considered part of the debtor's bankruptcy estate. The district court held that the funds were part of the estate. The Seventh Circuit held, as we now do, that a district court's decision to include funds in a bankrupt's estate is final and appealable. See also In re Woodson Co., 813 F.2d 266, 270 (9th Cir.1987) (determination that certain interests were not part of the bankruptcy estate held to be a final order).
 
 
 11
 The holdings of In re Regency Apts., supra, In re TCL Investors, supra, and In re Miscott, supra, are not to the contrary. They emphasize that an order is not final if on remand the bankruptcy court must exercise "significant judicial activity involving considerable discretion." Miscott, 848 F.2d at 1192. Such "activity", however, must be related to the order entered by the district court. The United States argues that the bankruptcy court's eventual division of the estate will constitute such "activity". This argument misses the point. The bankruptcy court certainly has more work to do in overseeing the administration of the R & R estate. The relevant question is whether the bankruptcy court can exercise any discretion in implementing the district court's order. It cannot. The district court's decision that the funds belong in the bankruptcy estate leaves nothing for the bankruptcy court to do except begin the everyday steps of the bankruptcy adjudication process.[6] See Matter of Fox, 762 F.2d 54, 55 (7th Cir.1985) (" '[F]inal' does not mean the same thing in bankruptcy as in other federal cases. A proceeding to establish a claim against a bankrupt estate is final for the purposes of appeal when it is over and done with, even though the bankruptcy goes on.").[7]
 
 B. Merits
 1. Summary Judgment Motion of the Trustee
 
 12
 The district court held that the funds that had been deposited in the joint account at TCB were part of the bankruptcy estate. A debtor's estate in bankruptcy consists of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. Sec. 541(a)(1) (1979) (emphasis added). The extent and validity of the debtor's interest in property is a question of state law. See In re Livingston, 804 F.2d 1219, 1221 (11th Cir.1986). Under Georgia law, "[d]eposits in a bank to the credit of a debtor become property of the estate under section 541(a)(1)", see King, 4 Collier on Bankruptcy p 541.11 at 541-71 (15th Ed.1979) ("Collier"), accord In re Williams, 61 B.R. 567, 570 (Bankr.N.D.Tex.1986), subject to the interest of any party for whose benefit the funds may be beneficially held. Collier at 541-72 & 73; Georgia Pacific Corp. v. Sigma Serv. Corp., 712 F.2d 962 (5th Cir.1983) (property held by debtor for the benefit of another would not become part of the bankruptcy estate). The legislative history of 11 U.S.C.A. Sec. 541 makes it clear that funds in the debtor's possession held for a third-party do not become part of the estate in bankruptcy:
 
 
 13
 Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.
 
 
 14
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5868, 6324. See also Collier, p 541.01 at 541-7; cf. Georgia-Pacific, 712 F.2d at 967, 971-72 (checks in debtor's possession made payable jointly to claimant and debtor held part of debtor's estate because no clear bilateral agreement stated that checks belonged to claimant).
 
 
 15
 It is undisputed that the funds deposited by T & B in the account were meant for R & R's materialmen. T & B's contracts with R & R and with the City of Atlanta expressly stated the funds were to be used to pay the materialmen. Like the hypothetical debtor holding funds meant to pay his physician described in the legislative history cited above, R & R was holding funds meant to pay its materialmen. In neither situation do the funds belong to the bankrupt estate.[8] The trustee argues that Georgia-Pacific, supra, is to the contrary. Although the Georgia-Pacific court found that checks held by the debtor made out jointly to materialmen and the debtor were part of the debtor's estate, the case actually supports our holding. The court recognized that property held by the debtor for the benefit of another was not part of the bankruptcy estate. Id., 712 F.2d at 967. The court rejected the materialmen's claim based on lack of evidence of a mutual agreement to give the proceeds of the checks to the materialmen. Id. at 971-72. As noted above, in this case it is undisputed that the parties agreed that the funds were meant solely for the materialmen. The district court erred in holding that the funds belonged in the estate merely because they had been located in an account bearing R & R's name.
 
 
 16
 Finally, TCB argues that under Georgia law it had a right to set off the funds in the account to satisfy a loan on which R & R had defaulted. See Cotton States Mut. Ins. Co. v. Citizens and Southern Nat. Bank, 168 Ga.App. 83, 308 S.E.2d 199, 203 (1983) (funds in general deposit accounts "are subject to set-off against any matured indebtedness for which the bank is creditor to the principal"); Simpson v. Georgia State Bank, 159 Ga.App. 310, 283 S.E.2d 278, 280-81 (1981) (funds in a special account may be set off to satisfy the debt of a party with no beneficial interest in the account if an express agreement so provides). At one point in time TCB may have had the right to set off the funds; however, because it did not assert its rights in a timely fashion, it is now foreclosed from doing so. See Prudential-Bache Securities, Inc. v. Bartow County Bank, 187 Ga.App. 530, 370 S.E.2d 751, 754 (1988).
 
 
 17
 In Prudential-Bache, a judgment creditor attempted to garnish funds held by the debtor's bank. The court held that once the funds, in this case a certificate of deposit, had been used to offset a deficiency on a defaulted loan, the judgment creditor could not garnish the funds. However, the court noted that interest collected on the deposit certificate had never been applied to the defaulted loan. The court held that although the bank could have offset the interest money before the garnishment action was filed, it was foreclosed from exercising its set-off rights after the claim was made. 370 S.E.2d at 754. The bank's request to set off the funds after the claim was filed came too late.
 
 
 18
 In the present case, both the United States and T & B asserted claims in federal court against the money long before TCB attempted to exercise its set-off rights. The IRS filed its notices of levy on September 23 and October 4, 1983. T & B brought the wrongful levy action on October 4. By November 17, all of the funds had been ordered deposited in the district court registry. The bank did not try to exercise its set-off rights until its motion to intervene on November 30. Under Prudential-Bache, the bank's chance at the funds had long since passed.[9]
 
 
 19
 2. Summary Judgment Motions of T & B and TCB
 
 
 20
 The district court restricted itself to determining whether or not the funds comprised part of the bankruptcy estate. It stated, "If the account is not within R & R's estate, the court would retain the action to determine the efficacy of T & B's and TCB's claims. In the latter scenario, fact issues would be involved and summary judgment would not be appropriate." Since the district court has not passed upon the merits of T & B's and TCB's claims against the funds (except to hold that their claims were inferior to that of the R & R estate), we will not decide their summary judgment motions.[10] See Osborne v. Folmar, 35 F.2d 1316, 1318 (11th Cir.1984) (remanding issue not considered by the district court). We therefore remand the case for the district court to determine to whom the funds in the registry should be disbursed.
 
 
 21
 For the foregoing reasons, the order of the district court is REVERSED and REMANDED.
 
 
 22
 HATCHETT, Circuit Judge, dissenting.
 
 
 23
 I would hold that the disputed funds became property of Roger & Roger's (R & R) bankruptcy estate pursuant to 11 U.S.C.A. Sec. 541 (West 1979 & Supp.1988).
 
 
 24
 The district court, relying on Georgia Pacific Corp. v. Sigma Service Corp., 712 F.2d 962 (5th Cir.1983), held that the disputed funds belong to the estate. T & B Scottdale Contractors, Inc. v. United States, No. C-83-2253-A (N.D.Ga. May 28, 1985) at 8, 10. The majority relies on Georgia Pacific Corp. v. Sigma Service Corp., but concludes that the funds do not belong to the estate. Consequently, the majority or the district court misreads the case.
 
 A. Section 541
 
 25
 A bankruptcy estate consists of "all legal and equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C.A. Sec. 541(a)(1). If the debtor holds property in trust for another, however, the property does not become part of the estate. The following example, in section 541's legislative history and quoted by the majority, illustrates this principle.
 
 
 26
 Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed.
 
 
 27
 H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977); Sen.Rep. No. 989, 95th Cong., 2d Sess. 82, reprinted in 1978 U.S.Code Cong. & Admin.News 5868, 6324 (quoted in Collier on Bankruptcy, para. 541.01 at 541; Georgia Pacific, 712 F.2d at 967 n. 4; Majority Opinion, at 1376).
 
 
 28
 The majority compares the hypothetical debtor and physician to R & R and R & R's materialmen and concludes that "[i]n neither situation do the funds belong to the bankrupt estate." Majority Opinion, at 1376. According to the opinion, the Georgia Pacific court recognized that all property held by a debtor for the benefit of another is not part of the debtor's bankruptcy estate. This conclusion, however, appears to mischaracterize the rule set forth in Georgia Pacific.
 
 B. Case Law
 
 29
 1. Georgia Pacific: Are the Facts Distinguishable?
 
 
 30
 In Georgia Pacific, Sigma, a general contractor, began a project for Georgia Pacific. Sigma asked Georgia Pacific to send it checks drawn to the order of both Sigma and its materialmen. 712 F.2d at 964. Sigma filed for bankruptcy under Chapter 11 while in possession of these checks. The materialmen argued that funds from the checks belonged to them, rather than to Sigma's bankruptcy estate. 712 F.2d at 964-65. The court, however, held that the funds belonged to the estate. 712 F.2d at 964, 972. The court focused on the fact that Georgia Pacific's agreement to draw jointly-payable checks placed "no affirmative duties upon Sigma in relation to the suppliers." 712 F.2d at 971-72.
 
 
 31
 The majority distinguishes T & B from Georgia Pacific by concluding that the T & B agreement placed affirmative duties on R & R in relation to its materialmen. "[I]n this case [unlike in Georgia Pacific ] it is undisputed that the parties agreed that the funds were meant solely for the materialmen." Majority Opinion, at 1376.
 
 
 32
 It is difficult to support the majority's distinction given the factual similarity between T & B and Georgia Pacific. For example, in Georgia Pacific, Georgia Pacific agreed to write checks to Sigma. In T & B, T & B Scottdale (T & B) agreed to deposit funds into a R & R account. In Georgia Pacific, Georgia Pacific contemplated that Sigma would use funds from the checks to pay materialmen. In T & B, T & B contemplated that R & R would use funds from the account to pay materialmen. In neither case were the materialmen parties to the agreement. It is difficult to conclude that the T & B agreement imposed affirmative duties on R & R, when the Georgia Pacific agreement did not impose affirmative duties on Sigma.
 
 
 33
 2. Georgia Pacific: Is Reliance on the Whiting Quote
 
 
 34
 Proper?
 
 
 35
 The majority also states that Georgia Pacific stands for the proposition that property held by the debtor for the benefit of another is not part of the bankrupt estate. This appears to be an incorrect reading of Georgia Pacific.
 
 
 36
 The statement upon which the majority relies comes from a passage in United States v. Whiting Pools, Inc., 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), that is quoted by the Georgia Pacific court. 712 F.2d at 967. The Whiting Court stated that property of the estate does not include "property of others held by the debtor in trust at the time of the filing of the petition." 103 S.Ct. at 2315 n. 10 (citing legislative history to 11 U.S.C.A. Sec. 541) (emphasis added). The T & B district court did not find the existence of a trust in favor of any party. The majority evidently finds a trust for the benefit of the materialmen. This the majority cannot do because the burden of establishing a trust relationship is on the party claiming the benefit of such a relationship. Georgia Pacific, 712 F.2d at 969 (citing Collier on Bankruptcy, para. 541.13 at 541-67). The materialmen are not parties to this litigation; consequently, no trust for their benefit can be created.
 
 
 37
 Further, the majority is incorrect in suggesting that either the Georgia Pacific court or the Whiting Court created a rule excluding all property held for the benefit of another from property of the estate. This is apparent from Georgia Pacific 's holding: Georgia Pacific's checks, held by Sigma for the benefit of materialmen, became property of the estate. Likewise, T & B's deposits, held by R & R for the benefit of its materialmen should become part of R & R's bankrupt estate.
 
 C. Conclusion
 
 38
 No Supreme Court or Eleventh Circuit decisions exist that control this case. The court in Georgia Pacific Corp. v. Sigma Service Corp., 712 F.2d 962 (5th Cir.1983), however, held that disputed funds similar to those in T & B belong to a bankruptcy estate. In addition, the funds in T & B came from an account named "Roger & Roger." All persons who signed the account signature card identified themselves as R & R officials. R & R co-signed all checks from the account. The account, therefore, constituted a legal interest of R & R.
 
 
 39
 Accordingly, when R & R filed for bankruptcy, the funds in the account became property of the estate pursuant to 11 U.S.C.A. Sec. 541. The materialmen, like other creditors, may pursue their claims against R & R in accordance with bankruptcy procedures.
 
 
 
 [1]
 Under-capitalized minority subcontractors often have problems obtaining surety bonds. The use of joint checking accounts made surety bonding unnecessary
 
 
 [2]
 The balance in the account was usually zero because T & B would deposit only enough to cover a specific invoice
 
 
 [3]
 The account card required the signature of agents of both T & B and R & R
 
 
 [4]
 However, it did not enter a final judgment under Fed.R.Civ.P. 54 against T & B, presumably because, if T & B had other unrelated claims to bring as an unsecured creditor against R & R's estate, it should be allowed to do so before the bankruptcy court
 
 
 [5]
 We suggested in our previous opinion that:
 if the litigation in question is viewed as the discrete controversy between T & B Scottdale and the trustee of whether the account should be included in the bankruptcy estate, the district court has indeed ruled on the merits, leaving only a judgment to be executed.
 815 F.2d at 1428. The controversy between the trustee and T & B is a discrete one, although it certainly has implications for other parties. If the money were not part of R & R's estate in bankruptcy, then TCB, the trustee, and the United States could make no claims against the money in the bankruptcy proceeding. The crucial threshold decision made by the district court was whether R & R's estate or T & B owned the money. Other claims could be addressed only after that determination had been made.
 
 
 [6]
 The United States also argues that when an order is final as to only one party, it is not appealable unless final judgment is entered against that party. See Fed.R.Civ.P. 54(b). The district court did not enter a Rule 54(b) judgment against T & B. Although the United States correctly states the law, that law does not apply in this case. The decision that the funds are part of the estate is final as to all parties. That issue may not be relitigated, although other questions concerning the actual division of the estate will be decided later by the bankruptcy court
 
 
 [7]
 Not only is the order final, but it is also appealable. In In re Regency, this Court held that for a collateral bankruptcy order to be reviewable:
 it must (1) be independent and easily separable from the substance of other claims in the action; (2) present a need to secure prompt review in order to protect important interests of any party; and (3) be examined in light of practical, rather than narrowly technical considerations.
 686 F.2d at 902. The court's order meets these criteria. It is easily separable, and is most efficiently reviewed before the funds in controversy are distributed to creditors in the bankruptcy proceedings.
 
 
 [8]
 It should be noted that $92,008.48 of the funds were not even in the joint account at the time R & R declared bankruptcy. R & R had neither possession of, nor control over, nor any equitable interest in those funds in the registry of the court at the time of the commencement of the bankruptcy case
 
 
 [9]
 When a bank has a contractual lien on a certificate of deposit, the result may be different. Prudential-Bache, 370 S.E.2d at 754. Under Georgia law, a bank may expand its rights beyond that provided by common law set off by contracting with the certificate holder to create a lien. See id. at 753; Spurlock v. Commercial Banking Co., 138 Ga.App. 892, 227 S.E.2d 790, 793 (1976), aff'd 238 Ga. 123, 231 S.E.2d 748 (1977). If such a contractual lien exists, the bank need not win any sort of race to the money represented by the certificate of deposit
 In this case the bank claims that such an express contract exists. The joint account signature card states:
 Bank may, at any time and without prior notice, charge the account for any indebtedness to the Bank, whether or not matured, if the Bank believes its ability to collect the debt is in any way in jeopardy.
 This clause does not create a lien on the account. It does not purport to give the bank rights typically associated with that of a lienholder. It does not use the term lien or security interest. It merely gives written expression to the bank's pre-existing set-off rights under Georgia common law, and adds the single expansion of encompassing unmatured debts. See Design Spectrum, Inc. v. First Nat. Bank of Atlanta, 182 Ga.App. 418, 355 S.E.2d 733, 734 (1987) (although common law set off applies only to matured debts, parties may include unmatured debts by contract). Finally, it is questionable whether a bank could even have a lien on money held in a general deposit account. Compare Phillips & Jacobs, Inc. v. Color-Art, Inc., 553 F.Supp. 14, 16 (N.D.Ga.1982) (bank has title to funds in general deposit accounts) with Stephens v. Clark, 154 Ga.App. 306, 268 S.E.2d 361, 363 (1980) ("As a general rule, a party cannot hold a lien on his own property.").
 
 
 [10]
 However, some of the findings necessarily made by this Court in the course of its decision in this case will be relevant upon remand. Obviously, R & R's estate is foreclosed from making a claim upon the funds, and TCB's claim of a right to set off or lien has been rejected. Most importantly, this Court has found that the funds placed in the registry were meant to pay R & R's materialmen. Those materialmen or a party succeeding to their interests would appear to have a strong claim to the funds. See Pearlman v. Reliance Ins. Co., 371 U.S. 132, 136 & n. 12, 83 S.Ct. 232, 234 & 35 & n. 12, 9 L.Ed.2d 190 (1962)